695 A.2d 153

**HARTFORD ACCIDENT & INDEMNITY COMPANY**

v.

**SCARLETT HARBOR ASSOCIATES
LIMITED PARTNERSHIP.**

No. 65, Sept. Term, 1996.

Court of Appeals of Maryland.

June 18, 1997.

Gregory L. VanGeison (Anderson, Coe & King, L.L.P., on brief), Baltimore, for petitioner.

J. Mitchell Kearney (Kevin J. Pascale, Miles & Stockbridge, on brief), Towson, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, RAKER and WILNER, JJ.

RODOWSKY, Judge.

We granted certiorari to review the holding concerning arbitrability made by the Court of Special Appeals in *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. Partnership*, 109 Md.App. 217, 674 A.2d 106 (1996). A condominium developer's agreement with a construction contractor included a provision for arbitration between those parties. The contract containing the arbitration provision had been incorporated by reference into the contractor's performance bond. The court held that the developer had not agreed to arbitrate its claim against the bond with the surety. As explained below, we agree with the holding by the Court of Special Appeals.

This dispute involves the large residential condominium in the Scarlett Place complex in the Inner Harbor area of Baltimore City. For purposes of this opinion we shall consider that Scarlett Place was developed by the respondents, Scarlett Harbor Associates Limited Partnership and its general partners, Leroy Merritt and Merritt Operations Corporation (collectively, SHALP).[1] The construction with which we are concerned utilized the construction manager process. Leonard A. Kraus Co., Inc. (Kraus) was engaged by SHALP to furnish and install metal framing and Gypsum sheathing and to perform other work. Their August 1986 contract refers to SHALP as "Owner" and to Kraus as "Contractor."[2]

General Conditions ¶ 7.9.1 of the SHALP–Kraus contract provided in part for arbitration under the American Arbitration Association Construction Industry Rules of "[a]ll claims, disputes and other matters in question between the Contractor and the Owner arising out of or relating to the Contract Documents or the breach thereof. . . ."[3]

---

1. The original general partners of the limited partnership were William Meyers, II and Leo J. D'Aleo, who were also joined as defendants to the complaint in the circuit court. The legal consequences of the arrangement between the persons comprising the former and current general partners are not relevant to the issue on this certiorari review.

2. The printed form utilized by the parties, with extensive special typewritten provisions, was the 1980 edition of AIA Document A201/CM, the Construction Management Edition of the Standard Form of Agreement between Owner and Contractor, where the basis of payment is a stipulated sum.

3. General Conditions ¶ 7.9.1 of the SHALP–Kraus contract reads, more fully, as follows:

   "All claims, disputes and other matters in question between the Contractor and the Owner arising out of or relating to the Contract Documents or the breach thereof . . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. No arbitration arising out of or relating to the Contract Documents shall include, by consolidation, joinder or in any other manner, the Architect, the Construction Manager, their employees or consultants except by written consent containing a specific reference to the Owner–Contractor Agreement and signed by the Architect, the Construction Manager, the Owner, the Contractor

The contract required Kraus to obtain a performance bond in the amount of 100% of the contract price. Petitioner, Hartford Accident & Indemnity Company (The Hartford), issued the bond to Kraus on its "Subcontract Performance Bond Form A." All parties to this certiorari review have treated SHALP as the obligee of the bond, and we shall do the same.[4] The bond contains, in relevant part, the following recital:

> "Whereas, Principal has by written agreement ... entered into a subcontract with Obligee for Renovation and addition to Scarlett Seed Building—Light Gauge Metal Framing (Scarlett Place Phase II & III) ... *which subcontract is by reference made a part hereof,* and is hereinafter referred to as the subcontract."

(Emphasis added).

In January 1993 the action out of which the issue before us arose was brought against SHALP and others in the Circuit Court for Baltimore County by Scarlett Place Residential

---

and any other person sought to be joined. No arbitration shall include by consolidation, joinder or in any other manner, parties other than the Owner, the Contractor and any other persons substantially involved in a common question of fact or law, whose presence is required if complete relief is to be accorded in the arbitration. No person other than the Owner or the Contractor shall be included as an original third party or additional third party to an arbitration whose interest or responsibility is insubstantial. Any consent to arbitration involving an additional person or persons shall not constitute consent to arbitration of any dispute not described therein or with any person not named or described therein. The foregoing agreement to arbitrate and any other agreement to arbitrate with an additional person or persons duly consented to by the parties to the Owner–Contractor Agreement shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof."

4. The bond in fact reads that Kraus, as principal, and The Hartford, as surety, "are held and firmly bound unto Transcon Construction Co. Inc., as Obligee." The construction manager identified in the August 1986 SHALP–Kraus contract was "TransCon Construction Company, Inc."

Condominium, Inc., the council of unit owners of the residential condominium. SHALP impleaded a number of third-party defendants, including Kraus and The Hartford. Both moved to compel SHALP to arbitrate its claims against them while proceedings in the circuit court on the third-party claims against them were stayed. The circuit court ordered arbitration between SHALP and Kraus, but the court denied The Hartford's motion to compel arbitration on the third-party claim against it. The Hartford appealed from that denial to the Court of Special Appeals.[5]

The Hartford's appeal was consolidated with the appeals from the final judgment disposing of the remaining claims in the action. *Hartford Accident & Indem. Co.,* 109 Md.App. 217, 674 A.2d 106. The Hartford contended that incorporating by reference the SHALP–Kraus contract into the bond " 'clearly' shows that the parties intended that claims under the bond would be decided in arbitration." *Id.* at 292, 674 A.2d at 143. The Court of Special Appeals disagreed, taking the view that "Kraus's subcontract was incorporated simply to establish the primary obligation on which Hartford's secondary obligation would depend." *Id.* Although recognizing that a majority of decisions from other jurisdictions had reached a different result, the court was not persuaded by either the number or the rationale of those decisions and affirmed the circuit court. *Id.* at 295–96, 674 A.2d at 144.

We granted The Hartford's petition for certiorari which presents the following question:

"May a surety that issued a performance bond which incorporated by reference a mandatory arbitration provision from a subcontract between the obligee and the principal

---

5. The circuit court certified as a final judgment under Maryland Rule 2-602 its order denying The Hartford's claim to compel SHALP to arbitrate with it. An order denying a claim that arbitration should be compelled in an action in which that is the sole claim asserted is an appealable judgment. *Litton Bionetics, Inc. v. Glen Constr. Co.,* 292 Md. 34, 437 A.2d 208 (1981).

enforce the arbitration agreement against the obligee in an action on the bond?"

The question presented is answered by a return to the fundamentals recently restated for the Court by Judge Chasanow in *Curtis G. Testerman Co. v. Buck,* 340 Md. 569, 667 A.2d 649 (1995). There we said:

"Arbitration is a 'process whereby *parties voluntarily agree* to substitute a private tribunal for the public tribunal otherwise available to them. \* \* \* A party cannot be required to submit any dispute to arbitration that it has not agreed to submit.' *Gold Coast Mall v. Larmar Corp.,* 298 Md. 96, 103, 468 A.2d 91, 95 (1983) (emphasis added). *Accord United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417 (1960). Arbitration is 'consensual; a creature of contract. As such, only those who consent are bound. \* \* \* In the absence of an express arbitration agreement, no party may be compelled to submit to arbitration in contravention of its right to legal process.' Thomas J. Stipanowich, *Arbitration and the Multiparty Dispute: The Search for Workable Solutions,* 72 IOWA L. REV. 473, 476 (1987) (citing *Martin K. Eby Constr. Co. v. City of Arvada,* 522 F.Supp. 449, 451 (D.Colo.1981)). *Accord Messersmith, Inc. v. Barclay Townhouse,* 313 Md. 652, 658, 547 A.2d 1048, 1051 (1988) ( ' "No one is under a duty to resort to . . . [arbitral] tribunals, however helpful their processes, except to the extent that he has signified his willingness." ') (citation omitted). An arbitration agreement cannot impose obligations on persons who are not a party to it and do not agree to its terms. *See A.B. Engineering Co. v. RSH Intern., Inc.,* 626 F.Supp. 1259, 1263 (D.Md.1986)."

*Id.* at 579–80, 667 A.2d at 654 (footnote omitted). In *Testerman* we held that an individual who had signed, as agent for a fully disclosed corporate principal, a contract containing an arbitration provision had not promised to arbitrate in his individual capacity. *Id.* at 578, 667 A.2d at 653.

In the instant matter the SHALP–Kraus contract contains a provision whereby those two parties agree to arbitrate with each other, and that is the agreement that the circuit court enforced. There is no provision in the SHALP–Kraus contract requiring inclusion of an arbitration provision in any bond that Kraus is to furnish.[6] Rather, The Hartford's submission that SHALP covenanted to arbitrate claims on the performance bond with the surety rests exclusively on the incorporation by reference in the bond prepared by The Hartford. That bond necessarily refers to the SHALP–Kraus contract inasmuch as the condition of the bond was that, if Kraus "shall promptly and faithfully perform [the SHALP–Kraus contract], then this obligation shall be null and void; otherwise it shall remain in full force and effect." But, in addition to identifying the SHALP–Kraus contract, The Hartford bond states that that contract "is by reference made a part hereof. . . ."

One leading writer on insurance law concludes, in effect, that reference in a performance bond to the contract to be performed, coupled with incorporation of that bond into the contract, is a belt and suspenders approach to interpretation of the bond. 13 G.J. Couch, *Couch Cyclopedia of Insurance Law* § 47:24, at 244 (2d ed. 1982). The author states

"that the incorporation by reference merely gives express declaration to what would be followed ordinarily in any event as a matter of general construction. That is, ordinarily the surety bond will be interpreted in the light of the contract, the performance of which is secured by the bond. The use of an express incorporation by reference clause is therefore more a matter of caution to make certain that the bond will be so construed."

---

6. Under General Conditions ¶ 7.2.1 of the SHALP–Kraus contract, the covenants of one party inure to the benefit of "successors" to the other party. The Hartford makes no argument that it is a successor to Kraus. We point out that the instant matter is not a case in which the surety took over completion of the work promised to be performed by its principal.

*Id.* (footnote omitted).[7]

By incorporating into the bond in the instant matter the contract that contains SHALP's promise to arbitrate with Kraus, The Hartford literally has incorporated as to SHALP only SHALP's promise to arbitrate with Kraus. The bond does not, by its terms, express any enlargement of the obligations of the obligee, and, even if The Hartford, acting unilaterally, or The Hartford and Kraus, acting by agreement, undertook to enlarge the obligations of SHALP under its contract with Kraus, that attempted enlargement ordinarily would be ineffective.

*Milske v. Steiner Mantel Co.*, 103 Md. 235, 63 A. 471 (1906), illustrates the point. In that case a partially erected building was blown down during a windstorm. The contract under which the builder agreed to construct the house made its completion an absolute and unconditional undertaking, but the performance bond furnished by the builder provided that neither the builder nor the surety would be liable " 'for any damage resulting from an act of God.' " *Id.* at 245, 63 A. at 472. When the builder sued the owner for an unpaid progress payment and for the value of materials that could be used in

---

7. By drafting the bond to incorporate, and not simply refer to, the SHALP–Kraus contract, The Hartford's conduct might be construed as a continuing offer to the obligee to arbitrate claims on the bond. That is not the issue before us, and we express no opinion thereon.

We note that there are many cases holding that a surety which has incorporated into its bond a contract containing an arbitration provision may be compelled to arbitrate with the obligee. The analysis, however, in the cases cited below does not go beyond the fact that the contract containing an arbitration provision has been incorporated into the bond. *See, e.g., United States Fidelity & Guar. Co. v. West Point Constr. Co.*, 837 F.2d 1507 (11th Cir.1988); *Exchange Mut. Ins. Co. v. Haskell Co.*, 742 F.2d 274, 275–76 (6th Cir.1984); *Transamerica Premier Ins. Co. v. Collins & Co., Gen. Contractors, Inc.*, 735 F.Supp. 1050 (N.D.Ga.1990); *Hoffman v. Fidelity & Deposit Co.*, 734 F.Supp. 192, 194–95 (D.N.J.1990); *Cianbro Corp. v. Empresa Nacional de Ingenieria y Technologia, S.A.*, 697 F.Supp. 15 (D.Me.1988); *Boys Club of San Fernando Valley, Inc. v. Fidelity & Deposit Co.*, 6 Cal.App.4th 1266, 1274, 8 Cal.Rptr.2d 587 (1992); *St. Paul Fire & Marine Ins. Co. v. Woolley/Sweeney Hotel # 5 and Hometels Constr. Corp.*, 545 So.2d 958 (Fla.App.1989); *Massachusetts Elec. Sys., Inc. v. R.W. Granger & Sons, Inc.*, 32 Mass.App.Ct. 982, 594 N.E.2d 545 (1992).

reconstruction, basing the claim upon the provision in the bond, the claim did not survive demurrer. Affirming judgment for the owner, this Court said:

"The bond was given, not to vary, or change in any particular the obligations of the [builder] under the contract, but to secure the faithful performance by him of all the duties assumed by him thereunder. Its object was to protect the [owner] from loss ... and cannot be construed to add to, or change any of the terms of the contract, or to be taken as a part thereof [*i.e.,* the contract did not include the *force majeure* provision of the bond]."

*Id.* at 247, 63 A. at 473. Accordingly, in the instant matter the bond did not enlarge SHALP's arbitration undertaking.

■ It is important to point out that The Hartford's argument is devoid of any element of a consensual modification by SHALP of the scope of its promise to arbitrate with Kraus. SHALP cannot be considered to have promised to arbitrate with The Hartford by accepting, as conforming to the SHALP–Kraus contract, the performance bond in the form issued by The Hartford on the theory that then settled law treated acceptance of the bond as an acceptance by the obligee of an offer by the surety to effect an arbitration agreement on the same terms as the obligee-principal agreement to arbitrate. There are three incorporation-by-reference cases that The Hartford has cited to us in which the obligee was compelled to arbitrate with the surety, but only one of them was decided prior to the issuance in 1986 of the bond involved here, *i.e., J & S Constr. Co. v. Travelers Indem. Co.,* 520 F.2d 809 (1st Cir.1975).

*Commercial Union Ins. Co. v. Gilbane Bldg. Co.,* 992 F.2d 386 (1st Cir.1993), and *Henderson Inv. Corp. v. International Fidelity Ins. Co.,* 575 So.2d 770 (Fla.App.1991), together with *J & S Constr. Co.,* support The Hartford's argument. Each of these cases concludes that the obligee, whose contract with the principal contains an arbitration clause, is obliged to arbitrate at the instance of the surety because the surety has drafted the bond to incorporate the obligee-principal contract into the

bond. As explained above, we do not believe that that result can be reached by contract analysis. Thus, as desirable as the result reached in the cases relied upon by The Hartford might be, we are unable to join those courts in reaching that result.

Undoubtedly there is a strong policy favoring arbitration and a strong policy to avoid repetitious hearings. Indeed, in *Litton Bionetics, Inc. v. Glen Constr. Co.*, 292 Md. 34, 437 A.2d 208 (1981), this Court construed the Maryland arbitration statute as empowering a court to order the consolidation of two separate arbitrations. The agreement between a building owner and its contractor for a project provided for arbitration, and the agreement between the same building owner and its architect for the same project provided for arbitration, but both contracts were silent as to consolidation. There was no conflict in the scope of the arbitration provisions in the two contracts involved in *Litton Bionetics*, and the procedure for arranging and conducting the arbitration was the same under both contracts. This Court "emphasize[d] that a court would improperly exercise its power to direct consolidated proceedings if that consolidation deprives any objecting party of a contractual right under the arbitration agreement." *Id.* at 53, 437 A.2d at 218. Three members of the Court dissented, reasoning that the consolidation did infringe on the contract rights of the parties opposing arbitration because the then practice of the American Arbitration Association, under whose rules relating to the construction industry the arbitration was to be conducted, was to consolidate arbitrations only upon unanimous consent. *Id.* at 58, 437 A.2d at 220. The minority believed that the association's practice was an implied term of the agreement to arbitrate, while the Court held that the statute, as construed, overrode the practice that was not expressed in the association's rules.

Here the judicial power to enforce an agreement to arbitrate cannot properly be exercised because there is no agree-

ment by SHALP to arbitrate with the Hartford.[8]

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY THE PETITIONER, HARTFORD ACCIDENT & INDEMNITY COMPANY.**

---

8. The circuit court, of course, has the power to stay further court proceedings by SHALP against The Hartford, pending the outcome of the arbitration between SHALP and Kraus, if under all of the circumstances a stay would be appropriate.