959 A.2d 833

CASE HANDYMAN AND REMODELING
SERVICES, LLC, et al.

v.

Judith SCHUELE, et al.

No. 2134 Sept.Term, 2007.

Court of Special Appeals of Maryland.

Oct. 31, 2008.

46

Lee B. Rauch (Toyja E. Kelley, Tydings & Rosenberg, LLP, on the brief), Baltimore, MD, for Appellants.

Thomas J. Minton (Lara K. Simon, Goldman & Minton, P.C., on the brief), Baltimore, MD, for Appellees.

Panel: SALMON, WOODWARD and GRAEFF, JJ.

GRAEFF, Judge.

Appellants, Case Handyman and Remodeling Services, LLC, and Case Design/Remodeling, Inc. (collectively, "Case Handyman"), appeal from an order of the Circuit Court for Baltimore County denying their motion to compel arbitration with appellees, Judith and Albert Schuele ("the Schueles"). On appeal, Case Handyman presents the following two issues for our review, which we have reworded and reorganized as follows:

1. Did the circuit court err in denying the motion to compel arbitration where the Schueles are suing Case Handyman in connection with a contract containing a mandatory arbitration clause that covers "[a]ny controversy/claim" arising from or related to the contract?

2. Did the circuit court err in denying the motion to compel arbitration without holding a hearing?[1]

---

1. The three questions presented by Case Handyman are as follows:
 1. Whether the Circuit Court erred, as a matter of law, in denying the Motion to Compel Arbitration where the Schueles: (i) are suing Case on, and in connection with, a Contract that contains a mandatory arbitration clause that covers, "Any controversy/claim" arising from or related to the Contract; and (ii) raise allegations of substantially interdependent and concerted misconduct by Case and the signatory to the Contract, PHR?
 2. Whether the Circuit Court erred, as a matter of law, in rendering a decision that was dispositive of the claim that the action was subject to arbitration without holding a hearing as Case requested and as Maryland Rule 2-311(f) required?
 3. Whether the Circuit Court erred, as a matter of law, in denying Case's Motion to Alter or Amend, when it had an opportunity, but failed, to correct its errors in not holding a hearing on, and denying, Case's Motion to Compel Arbitration?

For the reasons that follow, we hold that the trial court erred in denying the motion to compel arbitration.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 21, 2006, the Schueles entered into a home improvement contract with Shaun Arnold, a Baltimore County contractor and franchisee of Case Handyman.[2] Both Case Handyman and the Schueles refer to Mr. Arnold's home improvement company as Professional Home Repair, Inc. (PHR).[3] PHR signed the contract as "Case Handyman Services." At the bottom of each page of the contract was a street address in Hunt Valley, Maryland, and the phrase "Independently Owned and Operated."

Pursuant to the agreement, PHR agreed to perform "remodeling and/or repair work" on the Schueles' home in Towson, Maryland, which included the construction of "a second story structure" containing "two bedrooms [and] two full bathrooms. . . ." For this work, the Schueles agreed to pay $165,000, of which they paid 20 percent, or $39, 800, at signing. The Schueles wrote two checks to Case Handyman, one in the amount of $39,800 for the down payment, and the other for $2,700 for "written plans." The former check was made out to "Case Handyman Remodeling," while the latter was payable to "Case Handyman Services." Case Handyman Services endorsed and deposited both checks.

The eight-page contract set forth a payment draw schedule and described the work to be performed by the contractor. It also incorporated a "General Conditions" section, which contained an arbitration clause providing as follows:

---

**2.** For purposes of this appeal, we will assume the accuracy of the background facts set forth in the complaint.

**3.** PHR's name was apparently ascertained from the personal bankruptcy filing of its principal, Shaun Arnold, who, according to the Schueles, "identifies his home improvement company in the bankruptcy matter as 'Professional Home Repair, Inc. . . . ' "

> **2. CLAIMS**—Any controversy/claim arising out of or relating to this contract or its breach thereof, shall be settled by final and binding arbitration before a single arbitrator in the Baltimore metropolitan area in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

(Emphasis in original.)

In March, 2007, Arnold informed the Schueles that "he no longer had their funds, and that he would not begin work." He added that he was considering filing for bankruptcy protection. The Schueles assert in their complaint that Arnold later filed a "personal bankruptcy, but no corporate franchise with the 'Case' name is listed as a party in that bankruptcy matter." On June 6, 2007, after PHR failed to commence work on the project, and after Arnold filed for personal bankruptcy, the Schueles filed a class action complaint against Case Handyman in the Circuit Court for Baltimore County.[4] The complaint alleged breaches of contract (Counts I and II); fraud (Counts III through V); violations of the Maryland Consumer Protection Act (Count VI); and negligence (Count VII). In response, on August 15, 2007, Case Handyman filed a "Motion to Dismiss, or in the Alternative, to Compel Arbitration and Stay Proceedings," along with a memorandum of law in support of its motion, and a request for a hearing. The circuit court, in an order dated September 7, 2007, granted Case Handyman's motion to dismiss or compel arbitration, without explanation. The order stated that it was issued "[u]pon consideration of . . . any hearing," and noted that "[n]o response [was] filed" by the Schueles. The record indicates, however, that the Schueles filed an opposition to Case Handyman's motion on August 31, 2007, and, according to Case Handyman, the court held no hearings on its motion.

---

4. The record does not reflect certification of a class at this point.

The docket entries reflect that, on September 17, 2007, the circuit court struck its September 7 order and denied Case Handyman's motion to dismiss or compel arbitration. No September 17, 2007 order is in the record, and Case Handyman stated in its Motion to Alter or Amend Judgment that "[t]here is no written order" explaining the basis for the September 17 ruling. The docket entries reflect the following:

0007000 Open Court Proceeding 09/17/07 09/17/07 000 JGT
September 14, 2007 Hon. John G. Turnbull, II
Order dated 9/7/07 to be stricken, answer was filed. Motion to dismiss or Compel (Paper 4000) – Denied.

0008000 Ruling from Judge Turnbull – Strike 9/14/07 09/18/07 000 TBA
Order of 9/7/07 (Answer[ ] was filed)
Motion to dismiss or compel, Denied. Notices sent

The parties agree that, despite the language referring to an "Open Court Proceeding," no hearing was held.

On September 24, 2007, Case Handyman filed a Motion to Alter or Amend Judgment and a Request for Hearing, and the Schueles filed an Opposition to Defendants' Motion to Alter or Amend Judgment on October 11, 2007. By order filed on October 18, 2007, the circuit court denied Case Handyman's motion. It further denied Case Handyman's request for a hearing, citing Maryland Rule 2–311.[5] This appeal followed.

---

**5.** Maryland Rule 2–311 provides, in part:
*(e) Hearing—Motions for judgment notwithstanding the verdict, for new trial, or to amend the judgment.*—When a motion is filed pursuant to Rule 2–532, 2–533, or 2–534, the court shall determine in each case whether a hearing will be held, but it may not grant the motion without a hearing.
*(f) Hearing—Other motions.*—A party desiring a hearing on a motion, other than a motion filed pursuant to Rule 2–532, 2–533, or 2–534, shall request the hearing in the motion or response under the heading "Request for Hearing." Except when a rule expressly provides for a hearing, the court shall determine in each case whether a hearing will be held, but the court may not render a decision that is dispositive of a claim or defense without a hearing if one was requested as provided in this section.

**DISCUSSION**

**I.**

The issue presented in this appeal is whether the circuit court erred in denying Case Handyman's motion to dismiss or compel arbitration. Case Handyman offers several reasons why the circuit court erred in denying its motion. Initially, it argues that the arbitration provision in the home improvement contract is enforceable against the Schueles under the doctrine of "equitable estoppel," for two reasons: (1) their claims are predicated on the contract; and (2) the claims raise allegations of " 'substantially interdependent and concerted misconduct' " by PHR and Case Handyman. Moreover, Case Handyman maintains that the court's ruling denying the motion to compel arbitration contravenes Maryland's public policy favoring the enforcement of arbitration agreements. Finally, Case Handyman contends that the court erred by "completely dispos[ing] of a claim" after Case Handyman had requested a hearing, in violation of Maryland Rule 2–311(f).

In response, the Schueles argue that the circuit court correctly denied Case Handyman's motion because they "never agreed to arbitrate any disputes with Case, and Case never entered into any agreement with the Schueles." In their view, Case Handyman is not entitled to enforce the arbitration provision under the doctrine of equitable estoppel because Case Handyman's liability is premised upon "its duties under Maryland common law and statutes, not by PHR's contractual duties." Moreover, the Schueles argue that Case Handyman has not shown detrimental reliance, a required element of equitable estoppel. Additionally, the Schueles contend that the arbitration provision is unenforceable on the ground that it violates "the provisions of the Code of Maryland Regulations specifically addressing arbitration clauses in home improvement contracts." With respect to the argument that the circuit court erred in denying the motion without a hearing, the Schueles maintain that Case Handyman "had an adequate opportunity to be heard" in the proceedings below, as the

" 'hearing' required under Rule 2–311 need not include oral argument."

We hold that the doctrine of equitable estoppel is applicable here because the Schueles' claims against Case Handyman are predicated on the contract, which contains a broad arbitration clause, requiring arbitration for "[a]ny controversy/claim arising out of or relating to the contract or its breach thereof. . . ." Accordingly, the Schueles are estopped from refusing arbitration with Case Handyman. We also hold that the contract was in substantial compliance with the Code of Maryland Regulations ("COMAR") 09.08.01.25, and that, given the state policy favoring arbitration agreements, any deviation from the requirements in COMAR does not defeat the arbitration provision of the contract here.

### A. Appealability/Standard of Review

Maryland Code (2006 Repl.Vol.), § 12–301 of the Courts and Judicial Proceedings Article ("C.J."), authorizes an appeal of a final judgment. " '[A] trial court's order either compelling or denying arbitration is a final judgment under C.J. § 12–301.' " *Harris v. Bridgford,* 153 Md.App. 193, 201, 835 A.2d 253 (2003) (quoting *RTKL Assocs. v. Balt. County,* 147 Md.App. 647, 655, 810 A.2d 512 (2002)). Accordingly, it is an appealable order. *See Essex Corp. v. Susan Katharine Tate Burrowbridge, LLC,* 178 Md.App. 17, 30, 940 A.2d 199 (2008) (denial of petition to compel arbitration "is a proper subject of appeal at this juncture").

With respect to the standard of review to be applied, the theory of arbitrability is critical. Generally, courts review the grant or denial of arbitration *de novo. See Questar Homes of Avalon, LLC v. Pillar Const., Inc.,* 388 Md. 675, 684, 882 A.2d 288 (2005) ("The trial court's conclusion as to whether a particular dispute is subject to arbitration is a conclusion of law, which we review *de novo.*"); *Patten Grading & Paving, Inc. v. Skanska USA Building, Inc.,* 380 F.3d 200, 204 (4th Cir.2004) (denial of a "motion for stay and to compel arbitration is reviewed *de novo*").

■ When the application of equitable estoppel is involved, however, courts are not in agreement on the appropriate standard of review. Some courts continue to apply *de novo* review. *See JLM Industries, Inc. v. Stolt–Nielsen SA,* 387 F.3d 163, 169 (2nd Cir.2004); *MS Dealer Service Corp. v. Franklin,* 177 F.3d 942, 946 (11th Cir.1999); *Peach v. CIM Ins. Corp.,* 352 Ill.App.3d 691, 694, 287 Ill.Dec. 701, 704, 816 N.E.2d 668, 671 (2004). Other courts hold that, when the decision to compel or deny arbitration is based on principles of equitable estoppel, the decision should be reviewed for abuse of discretion. *See Am. Bankers Ins. Group Inc. v. Long,* 453 F.3d 623, 629 (2006); *Grigson v. Creative Artists Agency L.L.C.,* 210 F.3d 524, 528 (2000).[6] And one court has held that the standard of review depends on whether a factual dispute needs to be resolved to determine if equitable estoppel principles compel arbitration. *Metalclad Corp. v. Ventana Envtl. Organizational P'ship,* 109 Cal.App.4th 1705, 1716, 1 Cal. Rptr.3d 328 (2003). In *Metalclad,* the court held that, if the determination on equitable estoppel is based on the resolution of disputed facts, the decision is reviewed for substantial evidence, but if there is no dispute of facts, but only a dispute on the legal effect of those facts, *de novo* review is appropriate. *Id.* at 1716, 1 Cal.Rptr.3d 328.

We adopt the approach taken in *Metalclad.* Here, there is no dispute of facts regarding the issue of equitable estoppel. Rather, the issue is whether the Schueles' complaint is sufficiently predicated on the contract such that equitable estoppel prevents them from refusing to arbitrate their claim against Case Handyman. We will review this issue *de novo.*

### B. Applicable Law

■ In determining whether the circuit court erred in denying the motion to compel arbitration, we begin with the threshold inquiry of whether the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et. seq.,* or the Maryland Uniform

---

6. Those courts find an abuse of discretion if the court makes an error in law. *Am. Bankers,* 453 F.3d at 629; *Grigson,* 210 F.3d at 528.

Arbitration Act (MUAA), C.J., §§ 3–201 *et seq.*, applies to this case. "When an agreement's choice of law clause provides that disputes will be resolved in accordance with state law . . . the selected state's arbitration act governs issues concerning arbitration under the agreement's arbitration clause." *Rourke v. Amchem Products, Inc.*, 153 Md.App. 91, 119, 835 A.2d 193 (2003). Here, however, the home improvement contract contained no choice of law provision, so we look to the general rule regarding the applicable law for interpreting arbitration provisions.

■ The FAA provides that a written provision in a "contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In *Southland Corp. v. Keating*, 465 U.S. 1, 16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), the United States Supreme Court observed that, in enacting the FAA, Congress declared a policy in favor of arbitration and foreclosed state legislative attempts to require a judicial forum for the resolution of claims that the parties agreed to resolve by arbitration. As this Court has explained, the FAA "is applicable to private contracts made and enforced in Maryland when . . . the contract affects interstate commerce." *Mattingly v. Hughes Electronics Corp.*, 147 Md.App. 624, 632, 810 A.2d 498 (2002).

Case Handyman contends that home improvement contracts, which involve the purchase of materials and payment of taxes, necessarily involve interstate commerce. The Schueles have not argued otherwise, and there is support for a broad interpretation of the requirement that the contract "affects interstate commerce." *See Walther v. Sovereign Bank*, 386 Md. 412, 423, 872 A.2d 735 (2005) ("FAA applies to nearly all arbitration agreements . . . .").

■ There was, however, no evidence presented as to how the contract "affects interstate commerce," presumably because there was no hearing on the motion to compel arbitration. But, even if the present record does not permit a finding

that the FAA applies in this case, application of the MUAA provides the same result. The MUAA states, in nearly identical language to the FAA, that "[a] written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy arising between the parties in the future is valid and enforceable, and is irrevocable, except upon grounds that exist at law or in equity for the revocation of a contract." C.J., § 3–206. Indeed, the MUAA has been called the " 'State analogue . . . to the Federal Arbitration Act.' " *Walther*, 386 Md. at 424, 872 A.2d 735 (quoting *Holmes v. Coverall North America, Inc.*, 336 Md. 534, 541, 649 A.2d 365 (1994)). Both the state and federal acts establish a policy favoring enforcement of arbitration agreements. *Holmes*, 336 Md. at 541, 649 A.2d 365 ("The same policy favoring enforcement of arbitration agreements is present in both our own and the federal acts"). Accordingly, the Maryland appellate courts "rely on decisions interpreting the Federal Arbitration Act. . . ." *Walther*, 386 Md. at 424, 872 A.2d 735.

■ The Schueles contend, however, that application of equitable estoppel principles to an arbitration agreement issue is governed by state, not federal, law. In *Walther*, 386 Md. at 423, 872 A.2d 735, the Court of Appeals noted that, although Section 2 of the FAA pre-empts a state law that "withdraws the power to enforce arbitration agreements," state courts are not bound by the procedural provisions of the FAA. Indeed, the Supreme Court has stated that state law determines questions "concerning the validity, revocability, and enforceability of contracts generally." *Perry v. Thomas*, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). Thus, "[g]enerally applicable contract defenses, such as fraud, duress, or unconscionability may be applied to invalidate arbitration agreements without contravening § 2. . . ." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 682, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). The FAA, however, creates a "body of federal substantive law of arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). And, as noted, Maryland

appellate courts rely on decisions interpreting the FAA. *Walther*, 386 Md. at 424, 872 A.2d 735.

■ In this case, there is no issue regarding the contract's validity. And, given the breadth of the arbitration provision, providing for arbitration of "[a]ny controversy/claim arising out of or relating to this contract or its breach," the question is not what is covered by the agreement, but rather, who may invoke it. To resolve the issue whether a non-signatory can enforce a contract's arbitration provision under the doctrine of equitable estoppel, courts look to the federal substantive law of arbitrability. *See R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157, 160 n. 1 (4th Cir.2004); *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 n. 4 (4th Cir.2000); *Metalclad Corp.*, 109 Cal.App.4th at 1712, 1 Cal.Rptr.3d 328.

## C. Principles of Equitable Estoppel

■ The Schueles argue that they are not bound by the arbitration provision in the contract because they never entered into any agreement to arbitrate disputes with Case Handyman. Case Handyman agrees that it is a non-signatory to the contract, but it argues that it may enforce the contract's arbitration provision as a non-signatory under the doctrine of equitable estoppel. We agree with Case Handyman that principles of equitable estoppel preclude the Schueles from avoiding the arbitration requirement in the contract.

■ "Generally, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed' to arbitrate." *R.J. Griffin & Co.*, 384 F.3d at 160 (quoting *International Paper Co.*, 206 F.3d at 416). "The obligation and entitlement to arbitrate," however, " 'does not attach only to one who has personally signed the written arbitration provision,' " and " '[w]ell-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties.' " *Washington Square Securities, Inc. v. Aune*, 385 F.3d 432, 435 (4th Cir.2004) (quoting *International Paper Co.*, 206 F.3d at

416–17). The principle underlying the theory of equitable estoppel "rests on a simple proposition: it is unfair for a party to rely on a contract when it works to its advantage, and repudiate it when it works to its disadvantage." *Am. Bankers Ins. Group, Inc.,* 453 F.3d at 627 (quoting *Wachovia Bank, Nat. Ass'n v. Schmidt,* 445 F.3d 762, 769 (4th Cir.2006)).

Several federal courts have held that principles of equitable estoppel allow non-signatories to a contract to compel arbitration. In *MS Dealer Service Corp.,* 177 F.3d at 944–47, the United States Court of Appeals for the Eleventh Circuit considered whether Franklin, an automobile purchaser, was equitably estopped from avoiding arbitration with MS Dealer Service Corporation ("MS Dealer"), pursuant to an arbitration provision in a buyers order to which only Franklin and the car dealership were signatories. The buyers order incorporated by reference a "Retail Installment Contract," in which Franklin was charged $990 for a service contract through MS Dealer. *Id.* at 944–45. The buyers order contained an arbitration clause providing, in part, that " 'all disputes and controversies of every kind and nature between buyer and [the dealership] arising out of or in connection with the purchase of this vehicle will be resolved by arbitration ...' " pursuant to the provisions of the FAA. *Id.* at 944. Problems with the vehicle ensued, and Franklin filed suit in state court against the dealership and MS Dealer, alleging breach of contract, breach of warranty, fraud, and conspiracy. *Id.* at 944–45. Franklin claimed that MS Dealer and the dealership conspired to charge an excessive amount for the service contract. *Id.* at 945. MS Dealer filed a petition in federal court to compel arbitration, which the district court dismissed on the ground that MS Dealer was not a signatory to the buyers order, and, therefore, lacked standing to compel arbitration. *Id.* at 945–46.

The Eleventh Circuit reversed and remanded, finding that MS Dealer could compel arbitration under the doctrine of equitable estoppel. The court stated:

Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different

circumstances. First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause "must rely on the terms of the written agreement in asserting [its] claims" against the nonsignatory. When each of a signatory's claims against a nonsignatory "makes reference to" or "presumes the existence of" the written agreement, the signatory's claims "arise[ ] out of and relate[ ] directly to the [written] agreement," and arbitration is appropriate. Second, "application of equitable estoppel is warranted ... when the signatory [to the contract containing the arbitration clause] raises allegations of ... substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract."

*Id.* at 947 (citations omitted).

The court noted that both of the circumstances giving rise to equitable estoppel existed in that case. *Id.* Each of Franklin's claims against MS Dealer depended on her contractual obligations under the service contract. *Id.* at 947–48. Acknowledging that Franklin "cast all of her claims against MS Dealer as tort claims rather than contract claims," the court explained that " 'a party may not avoid broad language in an arbitration clause by attempting to cast its complaint in tort rather than contract.' " *Id.* at 948, n. 4 (quoting *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,* 10 F.3d 753, 758 (11th Cir.1993)). The court further noted that the arbitration clause in the buyers order "specifically requires arbitration of '[a]ll disputes and controversies of every kind and nature ... arising out of or in connection with this contract, its subject matter or its negotiation, as to ... any claim alleging fraud in fact [or] fraud in the inducement. . . .' " *Id.*

With respect to the second circumstance permitting equitable estoppel, the court found that Franklin's claims against the car dealership and MS Dealer were based on the same facts and were " 'inherently inseparable.' " *Id.* at 948 (quoting *Sunkist Soft Drinks,* 10 F.3d at 757). Accordingly, the Eleventh Circuit held that Franklin was estopped from avoiding arbitration with MS Dealer, and it reversed the lower court's

order and remanded with instructions to grant MS Dealer's petition to compel arbitration. *Id.* *Accord Sunkist Soft Drinks*, 10 F.3d at 757 (licensor-signatory was equitably estopped from avoiding arbitration with non-signatory parent corporation because its claims were " 'intimately founded in and intertwined with the underlying contract obligations' ") (quoting *McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., Inc.*, 741 F.2d 342, 344 (11th Cir.1984)).

Similarly, in *Am. Bankers*, 453 F.3d at 630, the United States Court of Appeals for the Fourth Circuit held that a signatory to an agreement containing an arbitration clause was equitably estopped from denying that it was bound to arbitrate with a non-signatory. There, the Longs purchased a $75,000 promissory note, which promised a ten-percent return, from Thaxon Life Partners (TLP). *Id.* at 625. The parties executed a Subscription Agreement with TLP containing an arbitration clause providing that " 'any dispute, controversy or claim arising out of or in connection with, or relating to, any subscription of the Note' ... shall be subject to arbitration." *Id.* TLP filed for bankruptcy, and notified the Longs and others that their investments were effectively lost. *Id.*

The Longs filed suit against American Bankers Insurance Group (ABIG), TLP's underwriter and a non-signatory to the Subscription Agreement, alleging, *inter alia,* negligence and securities fraud. *Id.* ABIG filed a petition in federal district court seeking to compel the Longs to arbitrate their claims, which the district court denied. *Id.* at 626. In reversing, the Fourth Circuit held that "the Longs' individual claims 'rely on' the terms of Note, and that because the Note was incorporated into the Subscription Agreement, it would be inequitable to allow the Longs to seek recovery on their individual claims and at the same time deny that ABIG was a party to the Subscription Agreement's arbitration clause." *Id.* at 630. The court reasoned that, "if TLP had never issued the Note, the Longs would have no basis for recovery against ABIG." *Id.* Because "the Longs' individual claims ... are dependent upon their allegation that ABIG breached a duty created 'solely by [the Note],' " the Longs were estopped from denying

that they were bound by the arbitration clause. *Id. Accord International Paper Co.*, 206 F.3d at 418 (non-signatory buyer was estopped from refusing to comply with arbitration clause in contract between manufacturer and distributor where contract "provides part of the factual foundation for every claim asserted by" the non-signatory); *Hughes Masonry Co., Inc. v. Greater Clark County School Bldg. Corp.*, 659 F.2d 836, 838–39 (7th Cir.1981) ("it would be manifestly inequitable to permit [signatory masonry contractor] to both claim that [non-signatory to contract] is liable to [signatory] for its failure to perform the contractual duties described in the . . . agreement and at the same time deny that [non-signatory] is a party to that agreement in order to avoid arbitration of claims clearly within the ambit of the arbitration clause").

This Court, while not addressing directly whether a non-signatory to a contract may enforce an arbitration clause in a contract, has expressed approval of the doctrine of equitable estoppel in the context of arbitration agreements. In *Westbard Apartments, LLC v. Westwood Joint Venture, LLC*, 181 Md.App. 37, 954 A.2d 470 (2007), we held that a party bringing a derivative action was equitably estopped from relying on a lease and operating agreement to bring its claims and, at the same time, disclaiming provisions in the agreements waiving a jury trial. *Id.* at 51–52, 954 A.2d 470.

*Westbard* involved the purchase of forty acres of land in Bethesda, Maryland, by Richard Cohen, the managing partner of a limited liability company. *Id.* at 40–41, 954 A.2d 470. Westwood Joint Venture, LLC ("Westwood"), the owner of nine parcels known as Park Bethesda, and Westbard Apartments, LLC ("Westbard Apartments") were parties to a lease that granted Westbard Apartments various rights, including the right of first refusal to buy Park Bethesda. *Id.* at 40, n. 1, 954 A.2d 470. Westbard Apartments was a limited liability company with two members, the National Electrical Benefit Fund ("NEBF"), a pension fund, and Westbard Investments LLC ("Investments"). *Id.* at 41, 954 A.2d 470. Cohen, a real estate developer, controlled Investments, and Investments was the "Managing Member" of Westbard Apartments, with fidu-

ciary duties to NEBF. *Id.* NEBF and Investments executed an Operating Agreement that, among other things, waived the right to a jury trial in any action relating to the agreement, and the lease between Westwood and Westbard Apartments contained a similar provision. *Id.* at 40, 46 nn. 9 & 10, 954 A.2d 470. After Cohen purchased Park Bethesda from Westwood in his individual capacity, Westbard Apartments and NEBF filed a complaint in the Circuit Court for Montgomery County against Westwood, Cohen, Investments, and others. *Id.* at 41, 954 A.2d 470. The complaint alleged, *inter alia,* breach of contract, breach of fiduciary duty, fraud, and misrepresentation. *Id.* at 41–42, 954 A.2d 470. The circuit court granted appellee's motion to strike Westbard Apartments' demand for a jury trial. *Id.* at 42, 954 A.2d 470.

In upholding the circuit court's judgment, we noted that, "[a]nalogous to an agreement to arbitrate, the Lease and Agreement contractually provide for waiver of trial by jury." *Id.* at 50, 954 A.2d 470. We were persuaded by the reasoning in *MS Dealer,* 177 F.3d at 947, that "non-signatories of an applicable arbitration contract were entitled to enforce its provisions under two circumstances of equitable estoppel." *Westbard,* 181 Md.App. at 51, 954 A.2d 470. Because NEBF was a member of Westbard Apartments, which was bound by the Agreement and lease provisions, we reasoned that NEBF could not "derivatively bring suit on behalf of Westbard as a member entity and simultaneously disclaim provisions in the Lease" by which Westbard was bound. *Id.*

Thus, in *Westbard* we held that the doctrine of equitable estoppel permits a non-signatory to a contract to enforce a contractual agreement by a signatory, in that case a contractual waiver of trial by jury. In this case, we hold, consistent with federal caselaw, that a non-signatory of an applicable arbitration contract can enforce an arbitration clause under the doctrine of equitable estoppel when the signatory's claims against the non-signatory rely on the written agreement.[7]

---

7. As noted, the arbitration provision in this case is very broad. As discussed, *infra,* more narrow language may restrict a non-signatory's ability to compel arbitration.

Applying the doctrine of equitable estoppel to the case at bar, we find that, because the Schueles' "entire case hinges on its asserted rights under the ... contract," *International Paper Co.*, 206 F.3d at 418, they are estopped from refusing to arbitrate with Case. The Schueles' claims against Case plainly arise from the home improvement contract they executed with PHR. The first two counts of the complaint, "Breach of Contract—Agency," and "Breach of Contract—Apparent Authority," allege that the agreed work pursuant to the contract has not been performed. Counts III and IV, claiming "Fraud by Misappropriation," allege misappropriation of funds paid pursuant to the contract for services to be performed. Count V, claiming "Fraud/Deceit," refers to representations in the contract. Count VI, claiming "Consumer Protection Violations," references the "drafting of contract terms," and Count VII, claiming "Negligence," alleges negligence in approving the contract.

In light of the Schueles' ubiquitous references to the contract in their complaint, we disagree with their assertion that "Case's liability will be determined by its duties under Maryland common law and statutes, not by PHR's contractual duties." Rather, we find that, in substance, their complaint hinges on asserted rights under that contract. We therefore hold that, because the Schueles' allegations arise out of and directly relate to their contract with PHR, the doctrine of equitable estoppel allows Case Handyman to enforce the arbitration provision in the contract.

The Schueles make two arguments in support of their contention that Case Handyman cannot enforce the arbitration requirement of the contract. The Schueles assert that they never entered into any agreement with Case Handyman, and they further aver that a party cannot be compelled to arbitrate when it has not agreed to do so. The Schueles cite several cases in support of their argument that non-parties cannot enforce arbitration provisions in contracts. Those cases are unavailing. For example, the Schueles rely on *The Redemptorists v. Coulthard Services, Inc.*, 145 Md.App. 116, 126, 801 A.2d 1104 (2002), in which this Court held that the

president of a cemetery services corporation was not a party to a contract, and therefore, he could not compel arbitration pursuant to an arbitration provision in that contract. There is nothing in that opinion, however, to suggest that the doctrine of equitable estoppel was raised as a basis to enforce the arbitration agreement.

*Hartford Accident & Indemn. Co. v. Scarlett Harbor Assocs. Ltd. P'ship,* 346 Md. 122, 695 A.2d 153 (1997), upon which the Schueles also rely, is similarly distinguishable. In *Hartford,* the Court of Appeals held that a surety, who had issued a bond incorporating a mandatory arbitration provision in a contract between a developer and a contractor, could not enforce that arbitration agreement against the developer. *Id.* at 129, 695 A.2d 153. The arbitration clause there, however, was narrowly drafted. It provided that " '[a]ll claims, disputes and other matters in question between the Contractor and the Owner arising out of or relating to the Contract Documents or the breach thereof . . . shall be decided by arbitration. . . . ' " *Id.* at 124 n. 3, 695 A.2d 153. It further stated that "[n]o arbitration shall include by consolidation, joinder or in any other manner, parties other than the Owner, the Contractor and any other persons substantially involved in a common question of fact or law, whose presence is required if complete relief is to be accorded in the arbitration." *Id.* Thus, the Court noted that, although there is a strong policy in Maryland favoring arbitration, the arbitration provision in *Hartford* both expressly specified, and excluded, certain parties to the arbitration proceedings. *Id.* at 129–32, 695 A.2d 153.

Pursuant to the specific language of the agreement in *Hartford,* a non-signatory could not enforce that arbitration agreement. *Id.* at 131–32, 695 A.2d 153. In the present case, however, the contract has broad language, requiring arbitration of "[a]ny controversy/claim arising out of or relating to this contract or its breach thereof. . . ."

Moreover, as with *The Redemptorists,* the Court in *Hartford* did not address the issue of whether a non-signatory to a contract could enforce an agreement to arbitrate under the

doctrine of equitable estoppel. To the extent that the cases the Schueles cite do not address equitable estoppel, the Schueles' reliance on them is unavailing.[8]

■ The Schueles next contend that Case Handyman may not invoke equitable estoppel to compel arbitration because estoppel, under state law, requires an element of detrimental reliance "that Case has never claimed to be present here." *See, e.g., Hill v. Cross Country Settlements, LLC,* 402 Md. 281, 310, 936 A.2d 343 (2007) ("Equitable estoppel essentially consists of three elements: 'voluntary conduct or representation, reliance, and detriment' ") (quoting *Mona Elec. Co. v. Shelton,* 377 Md. 320, 334, 833 A.2d 527 (2003)). Case Handyman, by contrast, avers that detrimental reliance is not a requirement for equitable estoppel in the context of enforcing an arbitration agreement. We agree with Case Handyman and hold that no showing of detrimental reliance is required for the application of equitable estoppel in the arbitration context.

The California Court of Appeal recently addressed this issue in *Turtle Ridge Media Group, Inc. v. Pacific Bell Directory,* 140 Cal.App.4th 828, 44 Cal.Rptr.3d 817 (Cal.Ct.App.2006). Similar to the Schueles' argument in this case, Turtle Ridge argued that equitable estoppel did not apply because the non-signatory could not show that it detrimentally relied on Turtle Ridge being obligated to submit to arbitration. The court noted that, even if detrimental reliance is an element of equitable estoppel under state law, the issue whether a non-signatory can compel arbitration " 'is answered not by state law, but by the federal substantive law of arbitrability.' " *Id.* at 835, 44 Cal.Rptr.3d 817 (quoting *Boucher v. Alliance Title Co., Inc.,* 127 Cal.App.4th 262, 268, 25 Cal.Rptr.3d 440 (Cal.Ct. App.2005)). The court explained that, "[r]egardless of wheth-

---

**8.** In one case cited by the Schueles, *Peach,* 352 Ill.App.3d at 699, 287 Ill.Dec. at 708, 816 N.E.2d at 675, the Illinois appellate court declined to apply the doctrine of equitable estoppel to compel a signatory plaintiff consumer to arbitrate her claims with a non-signatory defendant insurance company. As previously stated, however, we are persuaded by the federal court rulings adopting the doctrine of equitable estoppel.

er equitable estoppel may require detrimental reliance in other contexts, the test for applying equitable estoppel to an arbitration agreement is whether the causes of action are intertwined with the contract containing the agreement." *Id.* The court continued, *id.*:

> As such, the phrase 'equitable estoppel' is a bit of a misnomer, for detrimental reliance is not necessary. Although the doctrine's name might be confusing, its application is clear: Turtle Ridge cannot play fast and loose with its contractual obligations by selectively enforcing the subcontract. Its claims rest on the subcontract and therefore it is bound by all the terms of that subcontract, not just those it likes.

We agree with the above analysis. It is consistent with Maryland policy favoring arbitration agreements. Accordingly, we reject the Schueles' contention that application of equitable estoppel in the arbitration context requires a showing of detrimental reliance.

### D. Compliance with COMAR 09.08.01.25

 We next address the Schueles' contention that the arbitration clause is invalid because it does not comply with COMAR relating to home improvement contracts. COMAR 09.08.01.25 provides:

> A. A mandatory arbitration clause in a home improvement contract shall include the following information:
>
> (1) The name of the person or organization that will conduct the arbitration;
>
> (2) Whether any mandatory fees will be charged to the parties for participation in the arbitration and include the fee schedule;
>
> (3) Whether the arbitrator's findings are binding; and
>
> (4) A disclosure that, under Business Regulation Article, § 8–405(c), Annotated Code of Maryland, a claim against the Home Improvement Guaranty Fund by an owner shall be stayed until completion of any mandatory arbitration proceeding.

B. The parties shall affix their initials and date immediately adjacent to any mandatory arbitration clause in a home improvement contract, at the time of execution of the contract.

C. This regulation shall apply to all home improvement contracts executed after October 31, 1994.

The Schueles argue that the "PHR contract complies only with part A(1) and possibly with A(3) . . ." of the regulation. They further assert that, pursuant to *DeReggi Constr. Co. v. Mate*, 130 Md.App. 648, 658, 747 A.2d 743 (2000), " '[i]n determining whether strict or substantial compliance with a statute is required, we must look to the legislative purpose behind the statute.' " The Schueles aver that the "only purpose reasonably suggested by the regulation . . . is to ensure that the attenuated procedure not be imposed on homeowners without fully informed consent as to all relevant details." In their view, the arbitration provision "badly fails that test." Accordingly, they contend, the provision is unenforceable under the regulation, and the "doctrine of substantial compliance cannot revive [it]."

Case Handyman counters that the arbitration provision is enforceable because it substantially complies with the requirements of the home improvement regulation, and "because Maryland courts strongly favor enforcement of arbitration provisions." Case Handyman argues that the first three elements of the regulation are satisfied because the clause states that the American Arbitration Association (AAA) will conduct the arbitration, it incorporates AAA's mandatory fee schedule by reference, and it notes that the arbitration is binding. Case Handyman further maintains that part B of the regulation is met because the Schueles signed the "General Conditions" section of the contract containing the arbitration clause "multiple times . . . just inches from the arbitration clause." While conceding that the provision does not comply with part A(4), Case Handyman notes that the stay described therein "applies by law whether it is recited in the clause or not, and thus, this minor omission does not justify invalidating the agreement." Finally, Case Handyman avers that substan-

tial compliance is sufficient here, and the clause "substantially achieves the notice function the regulation contemplates."

We hold that the failure to comply with all of the requirements of COMAR 09.08.01.25 does not make the arbitration provision unenforceable. Indeed, COMAR 09.08.01.25 does not contain any penalty provisions or state that an arbitration clause is invalid if it fails to comply with the requirements of the regulation.

We also look to Md.Code (2002, 2008 Supp.), § 8–501 of the Business Regulation Article, which establishes the requirements for home improvement contracts in Maryland. Section 8–501 provides, in pertinent part:

(b) ... Each home improvement contract shall:

(1) be in writing and legible;

(2) describe clearly each document that it incorporates; and

(3) be signed by each party to the home improvement contract.

(c)(1) In addition to any other matters on which the parties lawfully agree, each home improvement contract shall contain:

(i) the name, address, and license number of the contractor;

(ii) the name and license number of each salesperson who solicited the home improvement contract or sold the home improvement;

(iii) the approximate dates when the performance of the home improvement will begin and when it will be substantially completed;

(iv) a description of the home improvement to be performed and the materials to be used;

(v) the agreed consideration;

(vi) the number of monthly payments and the amount of each payment, including any finance charge;

(vii) a description of any collateral security for the obligation of the owner under the home improvement contract; and

(viii) a notice that gives the telephone number of the Commission and states that:

1. each contractor and each subcontractor must be licensed by the Commission; and

2. anyone may ask the Commission about a contractor or subcontractor.

Significantly, Subsection (a) of § 8–501 contains a savings clause providing that "[a] home improvement contract that does not comply with this section is not invalid merely because of noncompliance" with requirements of § 8–501.

In *Gannon & Son, Inc. v. Emerson*, 291 Md. 443, 448, 435 A.2d 449 (1981), the Court of Appeals observed that the " 'legislative intent' " undergirding the " 'saving clause' " in subsection (a) was " 'that a contract should not be invalidated solely by noncompliance with the rather detailed, but in many instances, rather minor requirements set out in' " § 8–501. *Id.* (quoting *Harry Berenter, Inc. v. Berman*, 258 Md. 290, 297, 265 A.2d 759 (1970)). In light of this instruction, we find that the " 'savings clause' " in subsection (a) reflects the legislature's intent that an arbitration clause in a home improvement contract is not invalid for failure to strictly comply with COMAR 09.08.01.25. Indeed, the Maryland Home Improvement Commission adopted the requirements of COMAR 09.08.01.25 pursuant to § 8–207(a) of the Business Regulation Article, which authorizes the Commission to "adopt and enforce regulations to carry out" Title 8 of the Business Regulation Article. The requirements in that regulation, like those in § 8–501, are "rather detailed, but, in many instances, rather minor." *Harry Berenter, Inc.*, 258 Md. at 297, 265 A.2d 759. Thus, although contractors should adhere to the requirements in COMAR, a failure to comply does not render the arbitration clause unenforceable.

In any event, we agree with Case Handyman that the arbitration clause substantially complies with COMAR

09.08.01.25. The provision satisfies the requirements of sub-sections (1) and (3) of part A because it identifies the AAA and states that the arbitration is binding. And, although the provision fails to comply with parts A(2) and A(4), the record does not suggest that mandatory fees were at issue, or that a party sought to file a claim with the Maryland Home Improvement Guaranty Fund. Accordingly, the provision's failure to comply with parts A(2) and A(4) is of no harm or effect.

Finally, although the parties' initials and the date are not immediately "adjacent to" the arbitration clause as required by part B, as Case Handyman notes, the parties signed the "General Conditions" page containing the provision four times on the day they executed the contract, and the arbitration provision was underlined for emphasis. The unmistakable purpose of this requirement is to ensure that all parties to a contract are aware of the existence and terms of the arbitration clause. In the present case, the Schueles have not argued that they were unaware of the clause, or that they were prejudiced by failure to comply with this requirement. Thus, the failure to strictly comply with the regulation does not render the arbitration clause invalid.

## II.

For the foregoing reasons, we hold that the Schueles are equitably estopped from avoiding arbitration with Case Handyman, and that the arbitration provision is enforceable pursuant to COMAR 09.08.01.25. Because we conclude that the court erred in denying the motion to compel arbitration, we need not reach the argument that the circuit court erred in denying the motion without holding a hearing on the motion. Accordingly, we reverse the circuit court's order and remand with instructions to grant Case Handyman's motion to compel arbitration.

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY WITH INSTRUCTIONS TO GRANT APPELLANT'S MO-**

TION TO COMPEL ARBITRATION. COSTS TO BE
PAID BY APPELLEE.