## LOUIS STANTON *vs.* CONRAD LAPP.

*Trespass q. c. f. by Tenant Against Landlord—Interference
with Land Over Which Tenant Has Right of
Way—Evidence—Damages.*

A tenant in actual possession may maintain trespass *q. c. f.*
against his landlord for an interference with the leased prem-
ises which diminish the value thereof for the purposes of the
lease.

If the description of the land in the declaration in an action of
trespass is substantially the same as that contained in the
lease, a mere variance in form between the two descriptions is
immaterial, and the lease is admissible in evidence.

In an action by a tenant against his landlord to recover damages
for the latter's causing an excavation to be made on the
premises appurtenant to the leased property, the testimony
of one of the workmen who made the excavation that the
plaintiff did not object to the work to him or in his hearing,
is not admissible to rebut plaintiff's evidence that he had
made objection.

When the question is as to the extent of the rights of one tenant
under his lease, evidence as to the terms of another lease to
another tenant of adjoining property by the same lessor is
not admissible.

In an action of trespass, plaintiff is entitled to recover for the
damages growing out of the original injury which occurred
after the institution of suit down to the date of trial.

The fact that the plaintiff in such action is only entitled to the
use of certain land and not to its exclusive possession does not
prevent him from recovering damages for an unlawful interfer-
ence with his use.

Plaintiff was the tenant of a storeroom used as a saloon, the
lease including a certain lot of ground then used in connec-

tion with the saloon. Defendant became the owner of the property subject to the plaintiff's lease and made excavations on the lot for a drain and for a building. This lot, binding on an alley, had been used as a means of access to the rear of the saloon by plaintiff's customers, and the excavation destroyed that use and reduced the plaintiff's business. *Held,* that the jury were properly instructed that if they found that by reason of the excavation part of the trade and customers of the plaintiff were prevented from having access to plaintiff's saloon from the alley over said lot, and that by reason of such obstruction the plaintiff suffered loss in his business derived through such access to his saloon, then he is entitled to recover.

*Decided June 22nd, 1910.*

Appeal from the Circuit Court for Allegany County (HENDERSON, J.).

*Plaintiff's 2nd Prayer.*—If the jury find from the evidence that within three years before the bringing of this suit by the plaintiff the defendant entered upon and with picks and shovels and force and arms made deep and damaging excavations upon, and removed soil and earth from, the land and premises described in the lease in evidence, and the declaration or upon and from any part of said land, or premises, of which the jury shall find the plaintiff was in possession under said lease, and described in the declaration and shall find that by reason of such entry and excavation by the defendant part of the trade and customers of the plaintiff were prevented from having access to plaintiff's saloon from the alley in evidence, over said premises and shall further find that by reason of such obstruction the plaintiff suffered a loss of his customary trade and business derived through access to his saloon from said alley of such trade and custom, then the plaintiff is entitled to recover in this case. (*Granted.*)

The cause was argued before BOYD, C. J., BRISCOE. PEARCE, THOMAS and URNER, JJ.

*Chas. G. Watson,* for the appellant.

*David J. Lewis,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This is an action of *trespass quare clausum fregit* brought in the Circuit Court for Allegany County, by the appellee against the appellant. The declaration contains but one count, and it avers, in substance, that the defendant broke into and entered the plaintiff's close, situate in the town of Frostburg, in Allegany County, and did great damage thereon, excavated the ground appurtenant, destroyed the access of the plaintiff to an alley, broke open the cellar door, interfered with and damaged the trade, business and occupation of the plaintiff, and other damage and injury to the plaintiff's close, then and there did, to the great loss and damage of the plaintiff.

The close is described as beginning at a point on Main street, in the town of Frostburg being the eastern side of the front of plaintiff's premises, occupied by the plaintiff as a saloon, and leased from the defendant to the plaintiff and running with the north side of Main street, westerly sixteen feet, then at right angles with Main street, by a straight line 164 feet to any alley, then with the south side of the alley, in an easterly direction sixteen feet to a point, then by a straight line to the point of beginning, being the property leased to the plaintiff by the defendant, and being a part of the property described in a deed to the defendant from O. J. Moat, dated October 30, 1907, and recorded in one of the land Records of Allegany County.

The appellant, as defendant, pleaded to the declaration, that he did not commit the wrongs alleged, and upon trial,

the verdict and judgment being for the plaintiff, the defendant has appealed.

The record contains four bills of exception reserved by the defendant to the rulings of the Court, in the course of the trial. Three of these relate to rulings upon questions as to the admissibility of evidence and the fourth as to the rulings upon the prayers. These will be considered in their order, in the record.

The location of the premises and the *locus in quo* of the trespass are sufficiently set out in the averments of the declaration, and as described in a lease dated the 4th day of May, 1903, from one Orville J. Moat, of Washington, D. C., the predecessor in title of the appellant, of the property in dispute, to one Roberdeau Annan of Frostburg, Md., "for the full term of five years, beginning at and upon the expiration of the existing lease from Moat to one John Bradburn, (which has yet about two years to run)."

This lease, on the 10th day of November, 1905, was for a valuable consideration, assigned and transferred by Annan to the appellee, upon the terms mentioned in the lease, and he was in the actual possession of the property, at the time of the alleged trespass, and at the date of the trial.

The property is described in the lease as "all that store room, in Moat's Opera House Building, in Frostburg, now used, by John Bradburn, as a saloon, including all portions of the Opera House lot and premises now used in connection with the saloon." It appears that the Opera House property fronts on Main street, in Frostburg, and is divided into a number of tenement rooms, two of which are used as saloons, and one of these is the saloon property in question.

The appellant sometime in the year 1907, purchased this "Opera House property" from the lessor, Moat, subject to the Annan-Lapp lease and thereafter the appellee being in possession, under the lease, paid the monthly rent to the appellant, which was accepted by him, as the owner of the property.

At the trial of the case, there was evidence tending to show that the appellant, after he became the owner of the property, in the year 1907, entered upon the lot, covered by the lease, without the appellee's permission and excavated it in the rear of the appellee's saloon bounded by an alley for a drain and a building. That these excavations rendered access and approach to the saloon from the alley and rear of the building very dangerous for use, to the extent that the trade of the appellee from the rear of the building from the alley was practically destroyed, and the appellee's business was thereby largely reduced.

The evidence also tended to show that the plaintiff had objected to these excavations as an injury to his business and to his right of possession, but that the defendant replied, that "I own the place now, and can do what I please with it." And when plaintiff said, he would go to see a lawyer, defendant states: "Well go. I don't think, it will do you any good."

The witness, Annan, testified, that the saloon building and the lot in the rear upon which the alleged trespass was committed, were the same actually used by Bradburn, the former tenant and that he had used the lot in the rear of the saloon as a means of access to and from the saloon over the lot in the rear thereof to the back alley and' that Bradburn had exercised these rights.

The witness, Gilbert, testified that he was familiar with the conditions of the premises and the uses thereof, the lot included, when Bradburn occupied the saloon, and that Bradburn used the rear lot of plaintiff's premises for coal purposes, closets, there being no inside closets, and that a large part of Bradburn's trade came over the lot subsequently excavated, and that this trade continued to come to said saloon after the plaintiff began business there, but was prevented from so coming by the excavations, which excavated conditions still continued up until the trial of the case. He further testified, that when the defendant acquired the owner-

ship of the property from Moat, subject to the lease to Annan and Lapp, the defendant in the fall of 1907, excavated a large drain in the rear of the Lapp place which prevented access to the closet from the saloon, and also prevented access to the saloon from the rear of the lot; and that in the following April of 1908, defendant made other excavations for a cellar and foundation about five feet in depth near to the building and extending about the whole width of the part claimed in the declaration, embracing nearly the entire rear lot of plaintiff, which latter excavations remained up until the time of trial.

The plaintiff testified, that previous to the lease from Annan he occupied the next adjoining business room as a saloon, and retained its possession until May, 1908, paying rent therefor to defendant, that he rented the premises as stated in the lease from Annan, and paid the rent therefor to the defendant, monthly up until the time of trial, showing the receipts therefor to the jury, that Bradburn occupied the premises involved in this suit for five years before plaintiff acquired them, conducting therein a saloon, and used in connection therewith the closet, coal house, and the rear lot running back to the rear alley or street, from the premises, and used a private way leading from the side door of the saloon to get back; that farmers and others came to his saloon by way of said rear alley over the lot in the rear of his place as they also did when Bradburn occupied the premises, placing their teams and wagons on rear lot back of whole building, while they patronized his place of business, and did other business in the town of Frostburg; that most of Bradburn's trade had come from said rear street over the rear lot, and that most of plaintiff's trade also had reached him in that way. Plaintiff testified that in fall of 1907 defendant having bought the property, which embraced two tenements to the east of plaintiff's tenement and one to the west, proceeded to excavate a large drain in the rear of the saloon, and left it open, and in April, 1908, defendant ex-

cavated nearly the whole of plaintiff's rear lot as if for the purpose of a large building; that the drain excavated in the fall of 1907 cut off access to plaintiff's place from said rear street, and from his saloon to the closet, and that several parties fell in the drain, and that the excavation of the lot in the rear cut off all access of his patrons to his place from such rear alley, and also prevented him from reaching his coal house in the rear; that after the excavation of said drains and the excavation of said lot, his business as a result of the loss of his trade from the rear alley, fell off from forty to sixty per cent. in the months succeeding the excavation, which loss of business from such causes continued up to the time of trial; that before the excavations plaintiff's business amounted to from $400.00 to $600.00 per month; of which from forty to fifty per cent. was net profit.

The witness Bradburn, who had occupied the saloon prior to the plaintiff, testified that he used the lot in the rear thereof as a part of his tenancy and used the side door to a private alley; that the most of his trade came from the rear alley over the lot, where farmers would place their teams, and wagons while they patronized him; that he saw the excavated conditions of the premises during Lapp's tenancy, and that the excavations cut off all such trade, and that witness would not pay one-third as much rent for the premises with access from the rear alley cut off as he would with access as he enjoyed and used it during his tenancy.

The plaintiff's testimony was further corroborated by the testimony of the witnesses Betz and Griffith, who further testified, that the coal could only be brought to the place from the rear alley, and that the excavations had completely cut off access to plaintiff's place from the rear streets, and such excavations continued unremedied to the time of the trial. There was other evidence, tending to establish and to make out the plaintiff's case.

The testimony on the part of the defendant, was to the effect, that the drain or ditch was dug by the defendant on

the sixteen foot lot claimed by the plaintiff up to an opening in the cellar wall, under the room occupied by the plaintiff for the purpose of letting out the water in the cellar, which had been turned there by the plaintiff and which ran on and over the other property of the defendant; that the water flooded the room where the steam heating plant was located and rendered it useless, and that a passage way was put across the opening to the closets in rear of the building. That a part of the lot was excavated for the purpose of erecting a building within six (6) feet of the same building, but a six foot passage way was left back of the building. That the loss of the plaintiff's back door or country trade was not by reason of the excavations, but was due to the depression of business and other local causes. The defendant's evidence, as stated above, appears to have been corroborated in part by the witness Fresh, a clerk in the defendant's store. There was also evidence tending to show, that the excavations did not cut off or interfere with the plaintiff's ingress and egress, to and from the saloon, and the defendant denied that the plaintiff had objected to the work, until after it was finished.

It is thus seen, that the testimony on the part of the plaintiff and defendant, was, as is usual in such cases, conflicting and contradictory and it need not be further stated.

Upon the defendant's own theory, the case was one to be submitted to the jury, upon proper instructions and unless there was reversible error, in the rulings of the Court, the judgment cannot be disturbed.

As we have stated the material facts somewhat in detail, we will now consider the questions of law raised, on the record.

The first exception was taken to the action of the Court, in overruling the defendant's objection, to the admission in evidence of the lease from Moat to Annan, and the transfer of the lease from Annan to the plaintiff, dated the 10th day of November, 1905. This assignment is as follows:

"For one dollar and other valuable considerations I hereby assign and transfer the above lease to Conrad A. Lapp, at the same terms mentioned in the lease. It is further agreed that the said Lapp will not nor cannot transfer this assigned lease to any other person or persons without the written consent of the said Annan.

Witness our hands and seals, this 10th day of Nov., 1905.
Witness:    ·                  R. ANNAN.

     OLIN BEALL."

The Moat-Annan lease was dated, 4th day of May, 1903, and was to "Roberdeau Annan, his executors, administrators and assigns for all that store room in Moat's Opera House Building, in Frostburg, Md., now used by John Bradburn, as a saloon, *including all portions of the Opera House lot and premises now used in connection with the saloon for the full term of five years,* beginning at and upon the expiration of the existing lease from Moat to Bradburn (which had yet about two years to run) and for the sum of four hundred and eighty dollars per annum, payable in instalments of forty dollars each, on the last days of each month, accounting from the end of one month from the time when Annan shall take possession under this lease."

The substantial cause of action and the grievance complained of, was injury to the plaintiff's possession, and the suit was for the purpose of recovering damages for the trespasses. The lease was therefore, clearly competent evidence to establish and define the plaintiff's right to the possession of the premises in question. It is the settled law in this State, that anyone who is in actual and exclusive possession of real estate or chattels real at the time of the trespass, though his occupancy be limited and temporary, and though he has no title whatever, may maintain trespass *quare clausum fregit,* against any wrongdoer, or against anyone who has not title himself or authority from the real owner. *New Windsor* v. *Stocksdale,* 95 Md. 208; *Storr* v. *James,* 84 Md. 289.

In 24 *Cyc.* 1072, it is said, the lessor is answerable in damages to his lessee, for injuries to the premises which prevent his use or occupation or diminish the value thereof for the purposes of the lease where such injuries arise from the culpable negligence or deliberate act of the lessor.

There was no substantial variance between the description of the premises, the *locus in quo,* set out in the declaration and the lease offered in evidence or any such defect in the assignment of the lease, to require the rejection of them as evidence, in the case. A mere variance in form or in matter immaterial between the allegation and the proof, if the substance of the issue is proved, will not be regarded. The averments of the declaration in this case, are broad enough to cover any damage caused by the trespass or the unlawful invasion of the plaintiff's rights to the premises if sustained by proof. *Herbert* v. *Pue,* 72 Md. 311; *Ryan* v. *Gross,* 68 Md. 377; 24 *Cyc.* 929; *Keeley Brewing Co.* v. *Mason,* 102 Ill. App. 381.

The case of *McNamee* v. *Minke,* 49 Md. 122, relied upon by the appellant, rests upon an entirely different principle. *Minke's case* was an action on the case for a malicious prosecution of an ejectment suit where the action related to and was founded upon a record, as a necessary inducement to the plaintiff's right, which he was required to describe and set forth in his declaration. There was a discrepancy between the record offered in evidence and a material allegation set forth in the declaration, and the Court held in that case, that the variance was fatal, because the record failed to support a most material allegation in the declaration, and that the record was inadmissible. It further held, where a record or other document is described in the declaration and there be any variance between the document produced and that described in pleading, the document will be rejected. It is laid down as established, that every part of a written document stated in pleading is descriptive and material to be

proved as alleged. 1 *Chit. Pl.* 400; 1 *Greenleaf Evidence,* secs. 58-71; 2 *Greenleaf Evidence,* secs. 11 and 12.

The ruling in the case at bar on this exception, was therefore clearly right, because the evidence tended to prove the issue and to establish the character and extent of the plaintiff's possession.

Mr. Poe, in his work on *Pleading,* sec. 245, says: "Where the plaintiff *is* actually in possession in person or by his agents or servants, but without title, as for example under a void or parol lease, and the defendant is a mere wrongdoer, entering without right, the bare possession is sufficient to sustain the action."

There was no error in the ruling of the Court, in the second exception. This exception was taken to the refusal of the Court to permit the witness Lammert, who had worked on the excavation to testify in rebuttal "that the plaintiff had made no objections to him or in his hearing to the excavation." This evidence, we think, was inadmissible because it was clearly not proper rebutting testimony, and was also wholly collateral and irrelevant to the real issue on trial in the case. Whether the appellee made any objection to the witness or to another, could not legally affect the issue on trial. It was not in rebuttal of the plaintiff's testimony that he had objected and protested to the defendant, excavating the lot, nor did it tend to rebut the evidence of the appellee that he had made objections to the excavations of the lot, during the progress of the work, "but he could not remember to whom." It would not follow, even if the appellee had not objected to the excavation in the presence of the witness that he had made no objection to others, to the doing of the work that caused the damage. The introduction of this character of testimony would certainly be a departure from the established practice, in this State, and would tend to mislead the minds of the jury from the real issue in the case. *Lake Roland Ry. Co.* v. *Weir,* 86 Md. 273; *Slingluff* v. *Builders*

*Supply Co.,* 89 Md. 557; *City Pass. Ry. Co.* v. *Tanner,* 90 Md. 320.

The objection to the introduction in evidence of the lease from O. J. Moat to John Bradburn, set out in the record and presented by the third exception was properly sustained.

The Bradburn lease was a different lease, and simply leased or rented one room at the monthly rental of thirty dollars per month, for the term of one year, with the privilege of five years from the first day of May, 1900, whereas the lease in question from Moat to Annan and assigned to the plaintiff, leased all that store room, now used by John Bradburn as a saloon, including, in addition all portions of the Opera House lot and premises now used in connection with the saloon for the term of five years, for the sum of four hundred and eighty dollars per annum, payable in installments of forty dollars per month, on the last day of each month. We do not see in what way, the defendant was injured by the rejection of the Bradburn lease, as it did not provide for the use of the Opera House lot contained in the Annan lease, and this lease could in no way shed any light upon a trespass to a lot, the *locus in quo,* not contained in it.

The fourth and last exception brings up for review the several instructions of the Court. Two prayers were granted on behalf of the plaintiff, and three for the defendant. The plaintiff's first prayer appears to have been abandoned and the defendant's first, third and fourth prayers were rejected, and the fifth and sixth prayers were granted, with modifications by the Court. This exception then embraces objections, to the granting of the plaintiff's prayers and to the modification and rejection of the defendant's prayers.

Before passing upon this exception we deem it proper to remark, that the several prayers do not appear to have been properly included in the bill of exception, signed by the Judge of the Circuit Court for Allegany County, who heard the case, but to have been subsequently inserted in the record. They are however referred to in the exception by

number but not set out and included therein. No point or objection appears to have been made by the counsel, at the hearing or in their briefs, as to this manner of bringing up the prayers as contained in this record for the consideration of the Court, but we must not be considered, by this opinion, as sanctioning a departure from the well established practice, as directed by the rules of this Court, that the prayers must be set out in the exception or properly certified to by the Judge.

The instructions granted at the instance of the plaintiff were clearly right. No valid objection has been urged to the plaintiff's second prayer, and we do not understand that its correctness is seriously challenged here.

The plaintiff's third prayer and the modification of the defendant's sixth prayer, by the insertion of the words "up to the time of trial," in the place of the words, "up to the time of bringing this suit" have been approved and are supported by a number of decisions of this Court. *Aberdeen* v. *Bradford,* 94 Md. 670; *Evans* v. *Murphy,* 87 Md. 498.

In *Frostburg* v. *Duffy,* 70 Md. 47, this Court said, damages arising subsequent to the action may be taken into consideration, where they are the natural and necessary result of the acts complained of.

In *City of Baltimore* v. *Merryman,* 86 Md. 594, the Court held, that the plaintiff was entitled to recover for any damages she suffered even after the suit, if they were the natural and necessary results of the acts done prior thereto.

In *Corner* v. *Mackintosh,* 48 Md. 374, it is said, the authorities are uniform and clear in maintaining the principle, that the natural results of a wrongful act are understood to include all the damage to the plaintiff of which such act was the efficient cause, though in point of time the damage did not occur until sometime after the act done. The proof of actual damages may extend to all facts which occur and grow out of the original injury even down to the day of verdict, the exception to this rule excluding only such facts

as not only happened since the institution of the action but which furnish of themselves sufficient ground for a distinct suit.

There was no error, in the modification of the defendant's fifth prayer, by inserting therein the words "ground back of said Opera House," so as to make the prayer read, the plaintiff is not entitled to recover any damages resulting from the closing of any part of said ground back of said Opera House building to him or his patrons except that part described in the declaration.

The defendant's first prayer was a demurrer to the evidence, and was properly rejected.

Nor do we find any error, in the rejection of the defendant's third and fourth prayers which asserted the proposition that before the jury could find for the plaintiff, they must find that the plaintiff had exclusive use, of the ground described in the declaration, and that the defendant entered thereon and did the plaintiff substantial injury.

No authority has been cited for such a legal proposition, and we hardly think any can be found. In *B. & O. R. R. Co.* v. *Boyd,* 67 Md. 32, it was said, in an action of trespass *quare clausum fregit,* it is not necessary in order to entitle the plaintiff to a verdict that he should have given affirmative proof that he had sustained any particular amount of damages, for every unauthorized entry upon the land of another is a trespass and whether the owner suffer substantial injury or not, he at least sustains a legal injury which entitles him to a verdict for some damages. And in *Miller* v. *Miller,* 41 Md. 623, it was said, a plea that at the time of the alleged trespass, the plaintiff had not exclusive possession of the premises was bad, and it was so held.

What we have said disposes of the case and it follows the judgment appealed from must be affirmed.

*Judgment affirmed with costs.*