*Pulliam v. Dyck-O'Neal, Inc.*, No. 1080, September Term, 2018. Opinion by Nazarian, J.

**REAL PROPERTY – FORECLOSURE – DEFICIENCY JUDGMENT**

Deficiency judgments under Maryland Rule 14-216(b) allow secured parties or parties in interest to obtain an *in personam* judgment if there is a deficiency after the completion of an *in rem* mortgage foreclosure proceeding. Deficiency judgments are initiated by a motion filed after the primary foreclosure case has concluded, and after ratification of the audit, the fact and amount of the deficiency are adjudicated and not subject to re-litigation.

Circuit Court for Prince George's County
Case No. CAEF13-27154

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1080

September Term, 2018
_____

RYAN PULLIAM

v.

DYCK-O'NEAL, INC.
_____

Nazarian,
Arthur,
Wells,

JJ.
_____

Opinion by Nazarian, J.
_____

Filed:  November 1, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This case involves the usually untold last chapter of a familiar story. On September 29, 2006, Ryan Pulliam and Bree-Ann White obtained a loan from Pinnacle Financial Corporation ("Pinnacle") to buy a home in Bowie and executed a note (the "Note") promising to repay the loan. They defaulted on the loan in March 2009, and the lender eventually initiated foreclosure proceedings in the Circuit Court for Prince George's County. The home was sold to Federal Home Loan Mortgage Corporation ("Freddie Mac") for less than the amount owed on the Note. The sale was ratified and audited, and neither Mr. Pulliam nor Ms. White filed exceptions to the sale or the resulting deficiency.

After the foreclosure proceeding concluded, the Note was transferred twice, and landed in the hands of Dyck-O'Neal, Inc. ("DONI"), a debt collector. DONI filed a motion for deficiency decree on the debt owed, which the court granted. Mr. Pulliam appeals, arguing that the court erred *first*, by failing to construe DONI's motion strictly, in accordance with Maryland Rule 14-216(b); *second*, by entering a judgment that wasn't supported by admissible evidence; and *third*, by relying on an interest worksheet attached to DONI's motion in calculating damages. We agree with the circuit court's handling and analysis of the case, and vacate the judgment and remand with directions to correct one arithmetic error.

## I.    BACKGROUND

At the time they purchased their home, Mr. Pulliam and Ms. White executed the Note and promised to repay Pinnacle $390,000 at an annual interest rate of 7.125%, which yielded a monthly payment of $2,627.50. They fell behind in March 2009 and, so far as the record reflects, made no further payments after that. Four years later, in February 2013,

Nationstar Mortgage, LLC ("Nationstar"), the loan servicer, sent Mr. Pulliam and Ms. White a Notice of Intent to Foreclose indicating that they were 1,459 days past due on their payments. They would have to pay $175,879.49 to cure the default.

Nationstar appointed Substitute Trustees on June 7, 2013, authorizing them "to hold, collect and enforce the note." On September 12, 2013, the Substitute Trustees initiated foreclosure proceedings by filing an Order to Docket under Rule 14-204.[1] The Order to Docket included the following documents:

1. Notice of Foreclosure Action (Preliminary Loss Mitigation Affidavit)
2. Preliminary Loss Mitigation Affidavit, Loss Mitigation Application
3. Statement of Debt and plaintiffs have the right to foreclose
4. Military Affidavit and DOD printout(s)
5. Affidavit of Certifying Ownership of Note and that it is a true and accurate copy and Copy of Note
6. Affidavit Pursuant to Real Property Code 7-105.1(d)(ii) and [R]ule 14-207 and copy of Deed of Trust, copy of Appointment of Substitute Trustees and Copy of Notice of Intent to Foreclose.

The Statement of Debt outlined the balance owed as follows:

| | |
|---|---|
| Remaining Balance Due | $380,530.14 |
| Interest from 2/1/2009 to 11/15/2012 | $102,712.94 |
| Late Charges | $_____ |
| Corporate Advances | $_____ |
| Escrow (credit)/debit | $42,761.66 |

---

[1] The Rule provides that "any individual authorized to exercise a power of sale may institute an action to foreclose the lien." Md. Rule 14-204.

| Balance due as of November 15, 2012 | $526,004.74 |
| Per Diem Interest: | $74.28 |
| Interest Rate: | 7.125% |

Neither Ms. White nor Mr. Pulliam sought to dismiss or stay the foreclosure, and the Substitute Trustees arranged for a sale of the Property on September 3, 2014. They provided notice of the "time, place, manner and terms of sale by advertisement in The Washington Post, a newspaper published in Prince George's County, Maryland, once a week for at least three successive weeks before the day of sale . . . ." Freddie Mac was the successful buyer with a bid of $187,000. The Substitute Trustees then filed a Report of Sale with the court on September 25, 2014. Neither Mr. Pulliam nor Ms. White filed any exceptions to the Report of Sale; the court ratified the sale on March 3, 2015, and neither party filed exceptions to the ratification. Finally, an auditor filed a report detailing that Mr. Pulliam and Ms. White owed $405,918.53 after the sale proceeds were deducted from their balance. Again, neither party filed exceptions and the court ratified the auditor's report on June 22, 2015.

In the time after ratification, the Note was transferred twice. Nationstar, the original loan servicer, assigned "all of its rights, title, and interest in and to any cause of action against [Mr. Pulliam and Ms. White] for a deficiency claim" to Freddie Mac on December 30, 2015. Freddie Mac then assigned the Note to DONI on January 7, 2016.

DONI filed a motion for deficiency decree on November 1, 2017, seeking judgment against Mr. Pulliam and Ms. White in the amount of the deficiency plus interest. Both opposed the motion by arguing that DONI failed to serve them, that DONI lacked authority

3

to seek a deficiency judgment, that DONI failed to submit admissible evidence in support of its motion, and that the amount of the deficiency was incorrect. The court agreed initially that Mr. Pulliam had not been served, and authorized alternative service on him, which, at this point, everyone agrees was effective.

The court held a hearing on February 22, 2018, heard arguments both as to service and on the merits and, in an order entered on May 1, 2018, entered judgment against Ms. White (who then filed a petition seeking protection under federal bankruptcy law and has been discharged). On June 19, 2018, without holding an additional hearing, the court entered judgment against Mr. Pulliam in the amount of $405,918.53, plus prejudgment interest of $90,718.35, plus ongoing interest of $79.23 per day. Mr. Pulliam appeals. We supply additional facts as necessary below.

## II.    DISCUSSION

Mr. Pulliam asks us to vacate the deficiency judgment on several grounds.[2] *First*, he contends that the court erred by failing to construe DONI's motion strictly in accordance

---

[2] Mr. Pulliam identified the following Questions Presented in his brief:

1. Did the Circuit Court err by granting DONI's motion for deficiency judgment and by entering judgment against Mr. Pulliam in the amount of $496,636.88 when DONI failed to support its motion with any admissible evidence (*e.g.* proper affidavit, sworn testimony, or admissible documentation)?

2. Did the Circuit Court err by granting DONI's motion for deficiency judgment and by entering judgment against Mr. Pulliam in the amount of $496,636.88 when DONI failed to provide the Court with a complete, admissible chain of title to its purported right to collect any deficiency from Mr. Pulliam?

3. Did the Circuit Court err by granting DONI's motion for deficiency judgment and by entering judgment against Mr. Pulliam in the amount of $496,636.88

4

with Maryland Rule 14-216. *Second*, he argues that the court erred as a matter of law by entering judgment without admissible evidence to support DONI's claim to a deficiency judgment. *Third*, he argues that the court erred when it relied on an interest worksheet attached to DONI's motion in calculating damages.

"[W]hile the trial court is granted broad discretion in granting or denying equitable relief, where an order [of the trial court] involves an interpretation and application of Maryland constitutional, statutory or case law, our Court must determine whether the trial court's conclusions are 'legally correct' under a *de novo* standard of review." *Schisler v. State*, 394 Md. 519, 535 (2006); *see also Ehrlich v. Perez*, 394 Md. 691, 708 (2006).

## A. The Foreclosure Proceeding Resolved The Creditor's Right To Enforce And The Deficiency.

### 1. Background

Mr. Pulliam's arguments confuse the rules governing orders to docket and deficiency judgments.

In 2008, as the national housing-driven financial crisis emerged, the General Assembly enacted several emergency provisions governing foreclosures of residential real property. 2008 Md. Laws, Chap. 4; 2008 Md. Laws, Chap. 6; 2008 Md. Laws, Chap. 2. Most notably for this case, Chapter 2 of the 2008 Maryland Laws instituted time restrictions on the filing of foreclosure actions, provided for immediate foreclosure actions in limited circumstances, and required lenders to send a notice of intent to foreclose to the debtor.

---

when DONI based its damage calculation on an unsworn, inadmissible and flatly erroneous interest worksheet?

5

The law also established an order to docket proceeding, provided publication rules for notice of a foreclosure sale, and implemented a right to cure the default on behalf of the mortgagor. These new laws were codified in the Real Property Article ("RP") of the Maryland Code. *See* RP §§ 3-104.1, 7-105, and 7-105.1, *et seq.* [3]

The Maryland Rules then were amended to track these changes, first through emergency proposals submitted to the Court of Appeals in June 2008, then in a more detailed set of revisions the following year. The Rules Committee was concerned with "strik[ing] a fair balance by providing borrowers and others with sufficient standing, who have a legitimate defense to the foreclosure, a reasonable and practical opportunity to raise the defense, but not allowing for frivolous motions intended solely to delay the proceeding." 160th Rep. of the Rules Comm. at 7. The Court of Appeals adopted in 2009 the version of the Title 14 Rules in effect today. *See* Md. Rules 14-101, *et seq.*

### 2. The Order to Docket

After default, "any individual authorized to exercise a power of sale" may begin an

---

[3] The General Assembly adopted new changes to RP §§ 7-105, *et seq.* during the 2019 Session. The changes substitute the "Commissioner of Financial Regulation" for the "Department of Labor, Licensing, and Regulation" in certain provisions, but make no substantive changes. Md. Laws, Chap. 93.

RP § 3-104.1 details the information necessary in the instrument securing a mortgage loan for recording purposes. RP § 7-105 describes the power of sale in the event of default, and RP § 7-105.1 outlines more specific procedures for the sale process, including notice provisions, time restrictions, mediation options, order to docket rules, and service requirements. RP § 7-105.17(c) contains the motion for deficiency judgment provision. ("[A] secured party or an appropriate party in interest may file a motion for a deficiency judgment if the proceeds of the sale, after deducting all costs and expenses allowed by the court, are insufficient to satisfy the debt and accrued interest.") RP §§ 3-401, 7-105, 7-105.1, *et seq.*

action to foreclose the lien by filing an order to docket. Md. Rule 14-204. Foreclosure is a summary *in rem* proceeding that grants the mortgagee the power to dispose of the property. *See G.E. Capital Mortg. Servs., Inc. v. Levenson*, 338 Md. 227, 245 (1995). The filing must be accompanied by documents outlining the debt owed, the rights of the party seeking to foreclose, and notice to the debtor. Md. Rule 14-207. The secured party may sell or dispose of the property thirty days after filing a final loss mitigation affidavit. Md. Rule 14-209.1.

This appeal picks up after the foreclosure process was completed. Mr. Pulliam and Ms. White defaulted on March 2, 2009. Nationstar, the servicer with authority to enforce the Note, started foreclosure proceedings and filed an order to docket on September 12, 2013 that included an Affidavit of Note Ownership demonstrating its right to enforce the Note:

> I solemnly affirm under the penalties of perjury that to the best of my knowledge, information and belief, Federal Home Loan Mortgage Corporation is the current owner of the attached Note dated September 29, 2006 in the amount of $390,000.00 given by Ryan Jafi Pulliam and Bree-Ann White, and Nationstar Mortgage, LLC is the holder of the Note having been transferred to Nationstar Mortgage, LLC for the purposes of enforcement and conducting this foreclosure action and the attached Note is a true and accurate copy.

Although Maryland's foreclosure procedures are expedited compared to standard civil actions, mortgagors are not without options to defend the claim. "Maryland's foreclosure procedure was equitable in nature," and the matter "must not be marred by any fraudulent, illegal, or inequitable conduct." *Mitchell v. Yacko*, 232 Md. App. 624, 637–38 (2017) (quoting *Wells Fargo Home Mortg., Inc. v. Neal*, 398 Md. 705 (2007)). During this procedural process, mortgagors can object in three ways:

7

> [O]btaining a pre-sale injunction pursuant to Maryland Rule 14–209(b)(1), filing post-sale exceptions to the ratification of the sale under Maryland Rule 14–305(d), and the filing of post-sale ratification exceptions to the auditor's statement of account pursuant to Maryland Rule 2–543(g), (h).

*Wells Fargo*, 398 Md. at 726; *Mitchell*, 232 Md. App. at 637. Mortgagors with defenses to the foreclosure may raise them within fifteen days of the last of various procedural milestones. Md. Rule 14-211(a).

Here, Mr. Pulliam and Ms. White had three opportunities to file exceptions: when the order to docket was filed in September 2013, when the sale was ratified in March 2015, and when the auditor's report was filed in June 2015. But they didn't, and the foreclosure went uncontested. And once a foreclosure has ended, most attacks on its validity are barred. "The effect of a final ratification of sale is *res judicata* as to the validity of such sale, except in the case of fraud or illegality." *Jones v. Rosenberg*, 178 Md. App. 54, 72 (2008); *see Manigan v. Burson*, 160 Md. App. 114, 120 (2004) ("Ordinarily, upon the court's ratification of a foreclosure sale objections to the propriety of the foreclosure will no longer be entertained"). Mr. Pulliam has not made any allegations of fraud or illegality, and so the results of the foreclosure proceeding—including the fact and amount of the deficiency—have been adjudicated and are not before us except as inputs to the next stage, the deficiency decree.

## B. The Circuit Court Did Not Err In Granting The Motion For A Deficiency Decree.

### 1. The Motion for Deficiency Judgment Was Proper.

Deficiency judgments follow foreclosure proceedings and provide a remedy to a

lender or party in interest that sells the property for less than the balance of the debt. If, as here, the collateral sells for less than the amount of the debt owed, plus reasonable expenses related to the sale, the secured party may obtain a deficiency judgment against the debtor.[4] *CapitalSource Fin. LLC v. Delco Oil, Inc.*, 608 F. Supp. 2d 655 (D. Md. 2009) (applying Maryland law). A motion for deficiency judgment converts the foreclosure action from an *in rem* proceeding to an *in personam* proceeding, and the procedure is governed by Rule 14-216(b).

Mr. Pulliam argues *first* that the order of deficiency judgment should be vacated because the court failed to construe the requirements of Rule 14-216 strictly. The argument seems to derive from a reading of *Austraw v. Dietz*, 185 Md. 245, 252 (1945), in which the Court of Appeals held that "the statute authorizing the entry of deficiency decrees should be strictly construed because it is in derogation of the common law. Put another way, in scanning a foreclosure proceeding the court should exact strict compliance with all the requirements of the statute."[5] *Id.*

We see no deviation from the requirements of Rule 14-216 here. As an initial matter, DONI followed the procedural path mapped out by 14-216(b), which required it to file and serve a motion within three years of the court's ratification of the auditor's report:

---

[4] During the sale, the debtor may incur costs related to possession and sale of the collateral, "including the cost of insurance and payment of taxes or other charges, incurred in the custody, preservation, use, or operation by the collateral. . . ." Md. Code (2012), § 9-207(b)(1) of the Commercial Law Article.

[5] The statutes to which the Court referred were Maryland Code (1939), art. 16, § 241, art. 66, § 25, which authorized entry of a "decree in personam" against the mortgagor for the outstanding mortgage debt. Those were predecessor statutes to current RP § 7-105.17.

> At any time within three years after the final ratification of the auditor's report, a secured party or any appropriate party in interest may file a motion for a deficiency judgment if the proceeds of the sale, after deducting all costs and expenses allowed by the court, are insufficient to satisfy the debt and accrued interest. The motion shall be served in accordance with Rule 2-121. It shall be accompanied by a notice advising the person that any response to the motion must be filed within 30 days after being served or within any applicable longer time prescribed by Rule 2-321(b) for answering a complaint. A copy of Rule 2-321(b) shall be attached to the notice.

The circuit court ratified the auditor's report on June 22, 2015, and DONI moved for a deficiency decree on November 1, 2017, well within the three-year period.

*Next*, DONI served the motion for deficiency decree properly. Rule 14-216 cross-references Rule 2-121, which provides that service may be obtained in any of three ways:

> (1) by delivering to the person to be served a copy of the summons, complaint, and all other papers filed with it;
>
> (2) if the person to be served is an individual, by leaving a copy of the summons, complaint, and all other papers filed with it at the individual's dwelling house or usual place of abode with a resident of suitable age and discretion; or
>
> (3) by mailing to the person to be served a copy of the summons, complaint, and all other papers filed with it by certified mail requesting: "Restricted Delivery—show to whom, date, address of delivery."

DONI indicated in its motion that it mailed copies to Mr. Pulliam, and that by itself would be insufficient to obtain proper service under the Rule. But DONI, using a private process server, then attempted to serve Mr. Pulliam personally several times. After determining that Mr. Pulliam was evading service, DONI filed a motion for alternative service. The court granted that motion on April 4, 2018, and allowed DONI to obtain service by mailing.

Mr. Pulliam then was served by mail, and Rule 14-216's service requirement was satisfied.[6]

From there, Mr. Pulliam contends that the court failed to construe Rule 14-216 strictly, by which he seems to mean that the court didn't hold DONI to its burden of proving its right to a deficiency decree. For the reasons that follow, we disagree.

### 2. DONI Provided Ample Admissible Support For Its Motion.

Mr. Pulliam argues that DONI failed to support its motion for deficiency judgment with admissible evidence. To get there, he analogizes to other civil actions, such as motions for summary judgment, district court affidavit judgments, and consumer debt actions. This case stands on an altogether different posture, though. Foreclosure is fundamentally a remedy for a failure to pay a debt. A deficiency decree is the last stage of that remedial process, and it begins after nearly everything has already been decided definitively.

*First*, Mr. Pulliam argues that DONI did not comply with Rule 2-501(a), the summary judgment rule, because it didn't file a separate affidavit attesting the facts underlying the motion, and therefore the court could not consider the motion's attachments. Under 2-501(a), a motion for summary judgment "shall be supported by affidavit if it is . . . based on facts not contained in the record." This was not a summary judgment. This case arises under Rule 14-216(b), which permits "a secured party or any appropriate party in interest" to file a motion for deficiency judgment. It's true that Rule 2-311(d), the general motions rule, is comparable to the summary judgment rule in that a "motion . . . that is based on facts not contained in the record shall be supported by affidavit and accompanied

---

[6] Counsel conceded at oral argument that DONI eventually effectuated service, and that the service defects he raised in the circuit court had been cured.

by any papers on which it is based." But this motion didn't require an affidavit because in it, DONI relied almost entirely on facts developed in the record of the foreclosure action that, as a result, had already been adjudicated:

1. That on September 29, 2006 the Defendants borrowed money from Pinnacle Financial Corporation and executed a Note and Deed of Trust secured by the property located at 4302 Lavender Lane, Bowie, Maryland 20720.

2. That the Defendants defaulted under the terms of the Note and Deed of Trust, and at the direction of the noteholder, the Substitute Trustee did foreclose the Deed of Trust in the instant action.

3. That Dyck-O'Neal, Inc. is the current holder of the note as evidenced by an Assignment of Note from Federal Home Loan Mortgage Corporation attached hereto as Exhibit A.

4. That there still remains due and unsatisfied to your petitioner upon the mortgage claim in the above entitled case the sum of Four Hundred Five Thousand Nine Hundred Eighteen Dollars and Fifty Three Cents ($405,918.53) as found and determined by the auditor's account filed herein, which said account has been by this Court finally ratified on June 22, 2015, as will appear by reference to the said account, which is hereby prayed to be taken as part hereof.

5. That there remains due and unsatisfied to your petitioner, the sum of Ninety-Thousand Seven Hundred Eighteen Dollars and Thirty-Five Cents ($90,718.35) which includes pre-judgment interest on the unpaid principal at the rate of 7.125% from September 4, 2014 through October 23, 2017.

6. That interest continues to accrue at the rate of Seventy Nine Dollars and Twenty Three ($79.23) per day.

7. That under the provisions of MD Rule 14-216(b) of the Maryland Rules of Procedure, your petitioner is entitled to a deficiency decree in personam for the said sum of Four Hundred Five Thousand Nine Hundred Eighteen Dollars and Fifty Three Cents ($405,918.53) plus pre-judgment interest in the amount of Ninety Thousand Seven Hundred Eighteen Dollars and Thirty-Five Cents ($90,718.35),

12

> through October 23, 2017, against the said Defendants, being entitled to maintain an action at law against said mortgagors upon the covenants contained in the Deed of Trust filed in this case for the residue of the mortgage debt remaining unpaid and unsatisfied as aforesaid.

The one fact not already adjudicated by the foreclosure judgment was DONI's interest in the Note, which ripened after the foreclosure judgment. To establish that interest, DONI attached two notarized Assignments of Note ("the Assignments") in which the Note was transferred first from Nationstar to Freddie Mac, then from Freddie Mac to DONI. Mr. Pulliam characterizes these Assignments as hearsay and, as such, contends that they were not admissible evidence of the transfer. But the Assignments aren't hearsay: they're documents that contain legally operative language critical to the action, or non-hearsay verbal acts. *See Garner v. State*, 414 Md. 372, 388 (2010) ("[T]he rule against hearsay does not operate to exclude evidence of the 'verbal act' that establish[es] a consequential fact . . . ."). Legally operative documents have "a meaning independent of the truth of the words they display. As 'verbal acts,' their significance 'lies solely in the fact that [they were] made, [so] no issue is raised as to the truth of anything asserted." *Fair v. State*, 198 Md. App. 1, 36 (2011) (*quoting United States v. Davis*, 596 F.3d 852, 857 (D.C. Cir. 2010) (a paycheck was a non-hearsay verbal act)). Here, the Assignments contained legally operative language that demonstrated something necessary to DONI's claim, namely DONI's interest in the Note, which was key to its right to seek a deficiency decree. *See State v. Young*, 462 Md. 159, 177 (2018). The decision to credit the Assignments as establishing that interest was within the circuit court's discretion, and Mr. Pulliam has identified no reason for us to conclude that circuit court abused its discretion in doing so.

Md. Rule 8-131(c).[7]

We agree that Rule 2-311(d), outlining the affidavit requirement for motions, applies to motions for deficiency judgments under Rule 14-216(b). However, the court did not err in relying on the Assignments without an affidavit because, in addition to being non-hearsay verbal acts, they were independently admissible as self-authenticating documents. Like the parties, we haven't found any decisions detailing the exhibit and affidavit requirements for deficiency judgments. In the past, this Court has used Rule 2-311(d) to contextualize the requirements of the summary judgment rule. *See Bond v. Nibco, Inc.*, 96 Md. App. 127, 135 (1993) ("A party moving for summary judgment, like a party filing any other motion, must comply with Md. Rule 2-311. That is, if the summary judgment motion is based on facts not contained in the record or papers on file in the proceeding it 'shall be supported by affidavit and accompanied by any papers on which it is based.'"). We look, then, to case law surrounding the affidavit requirement for summary judgment for additional context.

---

[7] In *Stanton v. Lapp,* a party sought to enter an assignment that stated "[f]or one dollar and other valuable considerations I hereby assign and transfer the above lease to Conrad A. Lapp, at the same terms of the lease." 113 Md. 324, 332 (1910). The assignment was considered "competent evidence to establish and define the plaintiff's right to the possession of the premises in question," and was not hearsay. *Id.* The Assignments at issue here read almost identically:

> In consideration of ONE DOLLAR ($1.00) and other good and valuable consideration paid, the abovenamed Assignor hereby assigns to the above-named Assignee, all its right, title and interest to that one Promissory Note dated 9/29/2006 in the original principal amount of $390,000.00, along with any other evidence of indebtedness such as guaranty(ies) or endorsement(s) . . . .

14

A motion or response may be supported by evidence that would be admissible at trial. *Hartford Accident & Indem. Co. v. Scarlett Harbor Associated Ltd. Pers.*, 109 Md. App. 217, 263 (1996), *aff'd*, 346 Md. 122 (1997). Under Rule 5-902(a)(8), extrinsic evidence of authenticity is not necessary for "[d]ocuments accompanied by a certificate of acknowledgement executed in the manner provided by law by a notary public or other officer authorized by law to take acknowledgements." Here, the Assignments were each notarized by a notary public and, therefore, self-authenticating.[8] Accordingly, the court did not err in considering the Assignments which would be admissible at trial.

*Second*, Mr. Pulliam attempts to analogize deficiency decrees to affidavit judgment proceedings in District Court. Under Rule 3-306(b), a complaint for affidavit judgment "shall be supported by an affidavit showing that the plaintiff is entitled to a judgment as a matter of law in the amount claimed." Again, the analogy doesn't work. Rule 14-216(b) allows motions for deficiency decrees only after judgment in the foreclosure proceeding. A district court affidavit judgment case is a new case, without the benefit of an existing record. Mr. Pulliam argues that DONI was "a stranger" to the foreclosure action and could not rely on any facts in the existing record. That is a total *non sequitur*: DONI's predecessor

---

[8] In *Hartford Accident*, this Court considered *first*, whether, "irrespective of the admissibility of documents," a party is required to submit an affidavit in support of a response to motion for summary judgment, and *second*, whether the attached documents were admissible standing alone. 109 Md. App. at 263–64. We held that "[a]n affidavit is not the exclusive way" to support a response. *Id.* at 263. We further held that a photocopy of a document entitled "First Amendment to the Declaration of Easements, Covenants, Conditions and Restriction" was self-authenticated because it was notarized, was admissible, and could be relied upon by the trial court. *Id.* at 264.

in interest litigated the foreclosure, and DONI took the record as developed by Nationstar. Mr. Pulliam offers no support for the proposition that DONI was required to re-prove facts from the foreclosure judgment independently, and Rule 14-216(b) provides otherwise.

*Third*, Mr. Pulliam tries yet another analogy, this time to consumer debt collection actions. He argues that these lower-stakes cases require an affidavit, and "DONI failed to take the first step down the well-worn path known within the debt collection industry to collect on even a small judgment." And this analogy fails as well, and for the same reason: the critical facts already had been adjudicated before the motion was filed.

### 3. Although the Interest Worksheet Was Not Hearsay, The Math Was Incorrect.

*Finally*, Mr. Pulliam argues that the Interest Worksheet attached to DONI's motion was inadmissible, and thus inappropriate evidence of damages, because it too was hearsay. Once again, we disagree. DONI drafted the worksheet and attached it to its motion to assist the court in calculating the debt owed by Mr. Pulliam. The worksheet indicates that the court ratified the auditor's report on June 22, 2015, a fact taken directly from the record. The worksheet summarizes auditor's finding that the deficiency was $405,918.53 and the annual interest rate is 7.125%. These facts were already contained within the documents supporting the judgment and are not hearsay, and the rest is arithmetic.

From there, Mr. Pulliam contends that the worksheet made a mistake in the interest calculation, and he's right. The circuit court entered judgment in the amount of $405,918.53, plus 1,145 days of pre-judgment interest from September 4, 2014 through October 23, 2017, which totaled $90,718.35. But the deficiency identified in the auditor's

16

report, $405,918.53, already included interest calculated from the date of Mr. Pulliam's last payment, February 1, 2009, through the date the sale was ratified, March 3, 2015. The judgment the court entered included pre-judgment interest from September 4, 2014 to October 23, 2017, and thus double-counted the period between September 4, 2014 and March 3, 2015. That error added $14,340.63[9] to the judgment that should not have been included. Accordingly, we vacate the judgment in favor of DONI and remand to the circuit court with directions to enter a deficiency judgment in the amount of $405,918.53, plus 964 days of pre-judgment interest, from March 4, 2015 through October 23, 2017, totaling $76,377.72. The judgment is affirmed in all other respects.

> **JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY VACATED AND REMANDED WITH DIRECTIONS TO ENTER JUDGMENT FOR APPELLEE CONSISTENT WITH THIS OPINION. APPELLANT TO PAY 80% OF COSTS, APPELLEE TO PAY 20%.**

---

[9] We note that Mr. Pulliam indicates the overlap was $13,370.40. However, he uses the original daily rate of $74.28, not the daily rate using the deficit of $405,918.53 as the base, which totals $79.23.

17